**Ronald Keith CARPENTER, Plaintiff,**

**v.**

**The UNITED STATES, Defendant.**

**No. 92–663C.**

United States Court of Federal Claims.

April 30, 1993.

lack of jurisdiction with respect to all relief sought other than the request for attorney fees. As to the fee request, the court dismisses the complaint on the ground that it does not state a claim for which relief can be granted.

## FACTUAL BACKGROUND

Plaintiff has been an employee of the Naval Maritime Intelligence Command ("NMIC") and its predecessor, the Naval Technical Intelligence Center, Department of the Navy, since 1972. On November 2, 1990, Mr. Carpenter's security clearance and building access were suspended during an investigation of allegations that he had engaged in unlawful activities.[1] Based upon this suspension of his security clearance, he was suspended without pay from his position as color production section leader of the photographic services division pending the outcome of the investigation.

Mr. Carpenter appealed the suspension of his security clearance to the Department of the Navy Central Adjudication Facility ("DONCAF"), the administrative body authorized to adjudicate security clearance matters. He retained counsel to advise and assist him in appealing the suspension of his security clearance and the suspension without pay from his position. DONCAF issued a ruling favorable to Mr. Carpenter, but gave no explanation for its decision. The relief ordered was limited to the restoration of Mr. Carpenter's security clearance and building access.

NMIC then restored Mr. Carpenter to duty on January 27, 1992, and awarded him all back pay which had been withheld during the period of suspension. This was done pursuant to an internal policy guideline contained in a memorandum from the commanding officer of NMIC, dated October 1, 1991. The memorandum states: "[i]f a favorable adjudication [from DONCAF] is received [regarding a security clearance suspension], the Indefinite Suspension personnel action will be cancelled,

Elizabeth L. Newman and George M. Chuzi, Washington, DC, for plaintiff.

Hillary A. Stern, with whom were Acting Asst. Atty. Gen., Stuart E. Schiffer, David M. Cohen, and Thomas W. Petersen, Washington, DC, for defendant.

## OPINION

BRUGGINK, Judge.

Plaintiff Ronald Keith Carpenter seeks award of attorney fees under the Back Pay Act, 5 U.S.C. § 5596 (1988 & Supp.1993) ("BPA" or "Act"), and an order requiring defendant to reinstate him in his previous position, to issue him a revised performance evaluation for 1992, and to cease retaliation against him. The case is presently before the court on defendant's motion to dismiss for lack of subject matter jurisdiction. For the reasons expressed below, the court dismisses the complaint for

---

**1.** NMIC accused Mr. Carpenter of using government facilities for personal matters, omitting information from his security questionnaire, violating security requirements, and sexual harassment.

and the employee will be returned to duty with back-pay." NMIC did not, however, restore Mr. Carpenter to his former position as color production section leader. He was instead placed in the black-and-white section, working under the supervision of a junior Navy petty officer. Mr. Carpenter alleges that since his reinstatement, he has been subjected to a pattern of retaliation due to his success in obtaining restoration of his security clearance. This alleged retaliation included the receipt of a performance evaluation lower than that to which he claims to be entitled for 1992. Plaintiff requests this court to order NMIC to reinstate him at his previous position as color production section leader, to order defendant to cease harassment and retaliation against him for having successfully defended himself against the unfounded charges, and to order NMIC to issue him an "outstanding" performance appraisal for 1992. However, these requests are plainly beyond the court's power to grant.[2] The only relevant issue raised by the complaint is whether plaintiff is entitled to payment of attorney fees under the BPA to compensate him for expenses incurred in pursuing this matter at the agency.

## DISCUSSION

The Government's motion to dismiss is framed as a challenge to the court's jurisdiction, that is, whether the Tucker Act[3] and the BPA permit the court to consider a claim exclusively for attorney fees. As the court explained during oral argument, however, and as further explained below, it is the court's view that subject matter jurisdiction exists in this respect. Rather, the real weakness in the complaint that is revealed in the Government's motion is not want of jurisdiction but failure to state a claim. Plaintiff concurred during oral argument that the issue is not one of jurisdiction but whether, on the uncontested facts,

the court could grant relief. The case comes before the court on the very limited record developed below. The court asked counsel if plaintiff wished to rely on anything other than the fact of restoration of the security clearance and restoration to duty. Plaintiff does not. Accordingly, the issue is ripe for determination on the legal issue presented.

*Is there subject matter jurisdiction?*

Because suits in this court are always against the United States as defendant, the bar of sovereign immunity must be successfully negotiated by the plaintiff. Perfecting the waiver of sovereign immunity with respect to money claims arising from a statute or regulation often involves multiple levels of preliminary inquiry. Congress must have created a particular forum to hear claims against it; that forum must be authorized to hear the particular types of claims being asserted; and the statute or regulation must create an entitlement in qualified claimants to money from the United States Treasury. The first two inquiries are plainly jurisdictional ones and are not at issue here. Congress created the Court of Federal Claims as a forum and the Tucker Act gives it the jurisdiction over claims based on a statute.

That jurisdiction is of no moment, however, unless the third element is also satisfied. The Tucker Act itself confers no substantive rights for money damages against the Government. *Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 953. It only confers jurisdiction where some other source of law creates a right to recover against the United States. *Id.* A statutory, or regulatory provision thus forms the basis of a Tucker Act claim only when it can reasonably be interpreted as mandating payment of money by the Government to the plaintiff. *Id.* at 400, 96 S.Ct. at 954; *Eastport S.S. Corp. v. United States*, 178 Ct.Cl. 599,

2. *See United States v. Fausto,* 484 U.S. 439, 454, 108 S.Ct. 668, 677, 98 L.Ed.2d 830 (1988) (holding that the Court of Federal Claims is not an appropriate authority to review agency personnel determinations); *McClary v. United States,* 775 F.2d 280, 283 (Fed.Cir.1985) (maintaining that the Court of Federal Claims has no jurisdiction over cases sounding in tort); *see also United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976) (stating that the Court of Federal Claims does not have the power to grant equitable relief).

3. 28 U.S.C. § 1491(a)(1) (1988).

606–07, 372 F.2d 1002, 1009 (1967). Accordingly, the demonstration that a statute or regulation is money-mandating is often spoken of as a jurisdictional prerequisite to suit.

■■■ Once these three elements of the waiver of sovereign immunity are satisfied, however, subject matter jurisdiction attaches. Then, in order to recover, the claimant must demonstrate that, under the circumstances, it qualifies under the statute or regulation. As part of that inquiry, the actions of government employees involved must have been authorized in two senses: first, in terms of their personal authority to bind the Government, and second, in terms of the purposes of the statute or regulation. These inquiries are not addressed to the court's power to act. For example, the fact that a statute imposes conditions to recovery does not mean that the court has subject matter jurisdiction to consider the claim only if those conditions are met. So long as the there is a money-mandating statute and a colorable argument that the claimant fits under the terms of the provision, then the court must exercise jurisdiction. Questions particular to the claimant should be addressed not under Rule 12(b)(1) of the U.S. Court of Federal Claims ("RCFC"), but under Rules 12(b)(4) or 56.

Plaintiff's claim is based on the BPA.[4] The Government's initial contention in this case is that the Act is not money-mandating in any respect, and is certainly not money-mandating insofar as attorney fees are concerned. Consequently, the Government argues that there is no statute with which to link the Tucker Act to create jurisdiction here. It also contends that since under the BPA there must have been a determination by an appropriate authori-ty that plaintiff was subjected to an unwarranted or unjustified personnel action, the alleged lack of such a determination creates a jurisdictional defect.

Defendant's approach is understandable, but, for reasons expressed herein, slightly off the mark. The Act provides that a person who is found by appropriate authority to have suffered an unjustified or unwarranted personnel action is entitled, on correction of the action, to all pay and allowances, attorney fees, and interest. As defendant points out, the United States Court of Appeals for the Federal Circuit in *Spagnola v. Stockman*, 732 F.2d 908, 912 (Fed.Cir.1984), held that the Act is merely "derivative" in nature; that is, it does not in itself establish an entitlement to back pay, but depends upon the violation of other statutes or regulations which must themselves satisfy the requirements of the Tucker Act, such as the pay statutes. *See Shelleman v. United States*, 9 Cl.Ct. 452, 456 (1986).

The pay statutes, in conjunction with the BPA, are the basis for entitlement to money when someone is restored to duty. In other words, the BPA presumes that a person has been restored nunc pro tunc to a previous appointment, which would, under the pay statutes, normally entitle someone to salary, but for the fact that the time was not actually "worked." The BPA bridges that gap and authorizes a court or the Merit Systems Protection Board ("MSPB") or an employing agency to give back pay as a remedy.

The statement in *Spagnola* that the Act is merely derivative must be viewed in context. There, the plaintiff was not entitled to back wages because he was not seeking payment with respect to a position to which

4. The BPA provides, in relevant part:

> An employee of an agency, who ... is found by appropriate authority ... to have been affected by an unjustified or unwarranted personnel action ...
> (A) is entitled, on correction of the personnel action, to receive for the period for which the personnel action was in effect—
> (i) an amount equal to all or any part of the pay ... which the employee normally would have earned or received during the period if

> the personnel action had not occurred ...; and
> (ii) reasonable attorney fees related to the personnel action which, with respect to any decision relating to an unfair labor practice or a grievance processed under a procedure negotiated in accordance with chapter 71 of this title, ... shall be awarded in accordance with standards established under section 7701(g) of this title....

> 5 U.S.C. § 5596(b)(1).

he already had been appointed. The gap that could not be filled by the BPA in Spagnola's case was an appointment to a higher level position. There is no comparable lack of appointment here.[5] In this case, therefore, the Government is not assisted by its contention that the Act derives its money-mandating effect from the pay statutes, because the plaintiff was restored to a previous position.

██ The court thus has subject matter jurisdiction to hear claims that an employee is entitled to benefits under the BPA, at least so long as there is an allegation that the employee has been restored to a previously appointed position.[6] Whether in fact an appropriate authority has made a determination that an employee suffered an unjustified or unwarranted personnel action depends on the unique facts of each case. Therefore, the Government's argument that there has been no determination by an appropriate authority that the plaintiff was subjected to an unwarranted or unjustified personnel action raises an issue of failure to state a claim, not one of want of jurisdiction.

██ What is unusual about the present circumstances is that the remedy sought is not back pay—that has been voluntarily afforded by the agency—but attorney fees. This leads the Government to raise an additional argument that it also characterizes as jurisdictional. It contends that, unlike payment of salary, payment of attorney fees and interest, also directed by the BPA, have no statutory antecedent comparable to the pay statutes. Borrowing the language from *Spagnola* that the Act is merely derivative, the Government concludes that the BPA is not "money-mandating" with respect to interest and attorney fees because no *other* statute imposes such a requirement.

The Government can point for support to *Markey v. United States*, 27 Fed.Cl. 615 (1993). There, the court read *Spagnola* and *Library of Congress v. Shaw*, 478 U.S. 310, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986), as barring this court's entertainment of a claim for interest only under the BPA. *Shaw* iterates the maxim that prejudgment interest on awards against the Government are never presumed. There must be an explicit waiver of sovereign immunity by statute as to interest. The court in *Markey* examined the pay statutes and found no requirement that interest be paid on wages or salary. In the view of this judge, the inquiry was misdirected. It is neither surprising nor dispositive that the pay statutes make no reference to interest. They deal with routine payment of salary and wages. The BPA presumes the intervention of a personnel action and restoration to duty, events which the pay statutes have no occasion to address.

The logical place to begin an inquiry into whether there has been a waiver of sovereign immunity as to interest or attorney fees is the BPA itself. As the Supreme Court made clear in *Testan*, 424 U.S. at 407, 96 S.Ct. at 957, the Act was intended to create a monetary cause of action, but "only to those who were subjected to a reduction in their duly appointed emoluments or position." It is derivative, therefore, in that it can be invoked only by persons who would have benefited from the pay statutes, but for the wrongful interruption in pay. Nothing could be more explicit than the statement of the Supreme Court in *Fausto*, 484 U.S. 439, 454, 108 S.Ct. 668, 677, 98 L.Ed.2d 830, that "if an employee is found by an 'appropriate authority' to have undergone an unwarranted personnel action a suit for backpay will

---

**5.** In like manner, *United States v. Connolly*, 716 F.2d 882, 887 (Fed.Cir.1983), which points out that the BPA is not a jurisdictional statute, is not dispositive. There, the Federal Circuit held that there is no jurisdiction in the Court of Federal Claims to hear a claim that a probationary Postal Service employee was wrongfully removed.

**6.** Nevertheless, proper invocation of the BPA for failure to pay back wages should be a rare event

in this court. The court has no independent grant of authority to evaluate the propriety of dismissals or suspensions, and once an appropriate authority determines that an unwarranted or unjustified personnel action has taken place, that authority is authorized, indeed obligated under the Act, to pay back wages, and presumably that typically would occur, as it did here.

lie." Once such a determination has been made, in other words, the Court of Federal Claims has the obligation to entertain those suits under the Tucker Act.

The Act also mandates the payment of interest on back pay awards. This obligation is obviously derivative in the same respect as is the obligation of back pay. Interest is only due in those circumstances in which the employee has been put back to work and paid wages retroactively upon the necessary finding of an unjustified or unwarranted personnel action. While the obligation to pay attorney fees is not automatic, as will be discussed below, both the interest and attorney fee provisions of the BPA presume that there has been an award of back pay, which, in turn, presumes proper appointment to a position. It would be difficult to imagine what more Congress would have to say to waive sovereign immunity in this regard. In sum, it is true that the right to be put back to work and the right to receive salary or wages cannot be found in the Act. They must precede a claim under the Act. Once an employee has been restored to work, however, he must be given pay with interest, and is entitled to claim attorney fees.[7]

*Has there been a finding of an unwarranted personnel action?*

The Government argues that in this case there has not been a finding by an appropriate body that the personnel action by NMIC was unjustified or unwarranted. As discussed above, this is not a jurisdictional inquiry. The question therefore is whether, assuming the allegations of the complaint to be true, plaintiff has stated a cause of action. The Government stresses that neither DONCAF, in its decision to reinstate plaintiff's security clearance, nor NMIC, in its reinstatement of plaintiff to his position or its award of back pay, determined that the suspension was unjustified or unwarranted. The proper body to make such a determination, defendant contends, is the MSPB, which may make the determination that the personnel action was unjustified or unwarranted, and award attorney fees.[8]

Plaintiff counters that NMIC could not award back pay without statutory authorization. Any other payment would be an illegal gratuity. He argues that the only possible statutory basis for paying someone who has not worked is the BPA. The Act in turn requires a finding by the agency that plaintiff was subject to an unjustified or unwarranted personnel action. From this it follows, according to plaintiff, that the court may then award attorney fees "if warranted in the interest of justice." 5 U.S.C. § 7701(g) (1988).[9] The Government counters that the award of back pay to plaintiff was merely made pursuant to written NMIC guidelines and that it does not reflect a finding by an appropriate authority that an unjustified or unwarranted personnel action occurred.

The Government is correct that the record reflects no conscious consideration by NMIC of the circumstances of either the suspension or cancellation of the security clearance. In fact, the Government argues

---

7. Indeed, the Federal Circuit has routinely reviewed claims for attorney fees under the BPA. *See, e.g., Knight v. United States,* 982 F.2d 1573 (Fed.Cir.1993) (ruling that Government's prompt corrective action as to question requiring statutory interpretation made award of attorney fees unwarranted); *Naekel v. Department of Transp.,* 845 F.2d 976 (Fed.Cir.1988) (holding that pro se litigant was not entitled to attorney fees under the BPA); *Wilson v. Turnage,* 791 F.2d 151 (Fed.Cir.) (declaring claimant precluded from attorney fees under the BPA because claim preceded effective date of amendment allowing attorney fees), *cert. denied,* 479 U.S. 988, 107 S.Ct. 580, 93 L.Ed.2d 583 (1986).

After oral argument, defendant called the court's attention to 5 C.F.R. § 550.807(g) (1992),

which provides that a determination to deny fees may be appealed only if "provided by statute or regulation." This regulation neither adds to nor undercuts the court's Tucker Act jurisdiction.

8. In view of the fact that plaintiff's suspension has been cancelled, it is not clear that the MSPB would exercise jurisdiction at this point. *See Spezzaferro v. FAA,* 24 M.S.P.R. 25, 29–30 (1984), *aff'd,* 807 F.2d 169 (Fed.Cir.1986).

9. *See Sims v. Department of the Navy,* 711 F.2d 1578 (Fed.Cir.1983) (holding that the interest of justice standard applies to all awards of attorney fees under the BPA).

that the decision to repay was a mistake.[10] As seen in the holding of *Department of the Navy v. Egan,* 484 U.S. 518, 108 S.Ct. 818, 98 L.Ed.2d 918 (1988), discussed below, if the personnel action at issue is viewed only as the suspension from work, then the decision was arguably justified merely by the fact of the loss of the security clearance. On the other hand, plaintiff is correct that the necessary finding can be implied under the right circumstances.[11]

■ It is unnecessary, however, to resolve that question because the request for attorney fees raises an issue which either cannot be addressed by the court or must be resolved against plaintiff. Even if it is assumed that implicit in NMIC's award of back pay to plaintiff is a finding that his suspension from work was unjustified or unwarranted, such a finding, of itself, is inadequate to support an award of attorney fees. The Federal Circuit has held that a fee award must be warranted in the interest of justice. *Sims,* 711 F.2d at 1582–83 (holding that the standards under 5 U.S.C. § 7701(g) apply to all fee claims under the BPA; plaintiff there was not necessarily entitled to attorney fees under the interest of justice standard, even though he succeeded in obtaining reinstatement to his former job). The court in *Sims* adopted an analysis developed by the MSPB as expressed in *Allen v. United States Postal Service,* 2 MSPB 582, 2 M.S.P.R. 420, 434 (1980). The court identified the following factors as "circumstances considered to reflect the interest of justice":

1. Where the agency engaged in a "prohibited personnel practice" (§ 7701(g)(1));
2. Where the agency's action was "clearly without merit" (§ 7701(g)(1)), or was "wholly unfounded," or the employee is "substantially innocent" of the charges brought by the agency;
3. Where the agency initiated the action against the employee in "bad faith," including:

   a. Where the agency's action was brought to "harass" the employee;

   b. Where the agency's action was brought to "exert improper pressure on the employee to act in certain ways";

4. Where the agency committed a "gross procedural error" which "prolonged the proceeding" or "severely prejudiced" the employee;
5. Where the agency "knew or should have known that it would not prevail on the merits" when it brought the proceeding.

*Sims,* 711 F.2d at 1581.

Application of these factors in cases involving security clearance denials runs squarely into *Egan.* There, the Supreme Court held that with regard to security clearance matters, the review of the MSPB, as well as the courts, is severely limited. The reviewing forum can only inquire into: (1) whether cause for the removal/suspension existed; (2) whether in fact the clearance was denied/suspended; and (3) whether transfer to a nonsensitive position was feasible. *Egan,* 484 U.S. at 530, 108 S.Ct. at 825. The Court held that an agency has

10. Presumably, NMIC could have concluded that the decision to suspend was not unjustified or unwarranted and refused to award plaintiff back pay. In *Jones v. Department of the Navy,* 978 F.2d 1223 (Fed.Cir.1992), a similar situation existed. The plaintiffs in *Jones* were suspended from their jobs without pay during a security clearance investigation precipitated by allegations of unlawful activities on their part. The security clearance adjudication was favorable to the plaintiffs. The Navy reinstated them to their previous positions, but refused to award them back pay, stating that the suspensions were not unjustified or unwarranted. The MSPB and the Federal Circuit upheld the agency, stressing that security clearance matters are within the broad discretion of the executive agencies and it was thus not unjustified or un-

warranted for the Navy to have suspended Jones during the pendency of the investigations. *Id.* at 1225–27.

11. *See Brees v. Hampton,* 877 F.2d 111, 119 (D.C.Cir.1989) (indicating that the agency must have found that employee's removal was unwarranted or unjustified in order to make the award of back pay), *cert. denied,* 493 U.S. 1057, 110 S.Ct. 867, 107 L.Ed.2d 951 (1990); *Wilson,* 791 F.2d at 155 n. 1 (indicating that no formal finding of an unjustified or unwarranted personnel action was required because a settlement agreement which awarded back pay was "predicated on the principle that the personnel action was unjustified or unwarranted").

broad discretion in determining who may have access to classified information, and that the MSPB and the Federal Circuit may not review the merits of the underlying determination on whether to grant or deny a security clearance. *Id.* at 529–30, 108 S.Ct. at 825.

At oral argument, counsel contended that plaintiff was substantially innocent of the charges that prompted cancellation of the security clearance and thus he falls into the second *Allen* category. This contention is based on the fact that under the NMIC policy, there is a presumption that security clearances will be denied.[12] Counsel reasons that given the presumption against granting a security clearance, plaintiff must have been substantially innocent of the charges in order to have his security clearance reinstated. The problem with that contention, however, is that, in light of *Egan*, it puts plaintiff on the horns of a dilemma. If the "personnel action" at issue is viewed as the job suspension,[13] then *Egan*'s limited review dictates that the action was justified. If the substantial justification inquiry is focused instead directly on the security clearance suspension, then *Egan* once again would bar any substantive review.

In sum, whether plaintiff was substantially innocent of the charges against him with respect to the security clearance cancellation is thus irrelevant to our inquiry. He was suspended from his job because his security clearance had been suspended. This is as probing as our analysis may be when it comes to security clearance matters.

### CONCLUSION

While the court has subject matter jurisdiction to entertain the request for attorney fees, the complaint fails to state a claim upon which relief can be granted. The other elements of relief sought are beyond the court's jurisdiction. The Clerk is directed to dismiss the complaint. No costs.

---

12. The NMIC memorandum, which the Government relies upon as authorization for the award of back pay, states that "[a]ny doubts concerning personnel access to classified material or spaces will be resolved in favor of national security." *See also Egan,* 484 U.S. at 528, 108 S.Ct. at 824 (citing Exec. Order No. 10450: "The general standard is that a clearance may be granted only when 'clearly consistent with the interests of national security.'").

13. The term is not defined in the BPA. In *Testan,* however, the Court clearly suggests that the term is intended to refer to employment actions directly affecting pay or allowances, such as terminations, suspensions, or reductions in grade. *Testan,* 424 U.S. at 405, 96 S.Ct. at 956; *see also Donovan v. United States,* 580 F.2d 1203, 1206–07 (3rd Cir.1978).