**Rowdy ADAMS, et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

No. 96–93C.

United States Court of Federal Claims.

Feb. 13, 2001.

Everett L. Bobbitt and Sanford A. Toyen, San Diego, CA, argued for plaintiffs.

Allison Page, U.S. Department of Justice, Civil Division, Commercial Litigation Branch, argued for defendant. With whom on the briefs were David W. Ogden, Assistant Attorney General, David M. Cohen, Director, and William L. Olsen, Trial Attorney, Civil Division, Commercial Litigation Branch. Peter Gregory, Immigration and Naturalization Service, of counsel.

## OPINION

BRUGGINK, Judge.

This is an action brought by United States Border Patrol Agents, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219 (1994 & Supp. IV 1998). We previously held that plaintiffs in certain border patrol positions were entitled to overtime pay as a result of their wrongful classification as exempt from FLSA overtime provisions, 29 U.S.C. § 213(a). *See Adams v. United States*, 44 Fed.Cl. 772 (1999). Most remaining positions were found to be exempt. *Id.* Subsequent to the liability determination, plaintiffs moved for partial summary judgment on various damages issues. In an April 5, 2000, opinion the court held, among other things, that winning plaintiffs were not entitled to prejudgment interest on their back

pay awards. *See Adams v. United States,* 46 Fed.Cl. 616, 619 n. 2 (2000). One motion currently pending before the court is plaintiffs' "Motion for Rehearing" pursuant to RCFC 59 on the issue of prejudgment interest. Also pending before the court are plaintiffs' and defendant's cross motions for partial summary judgment on the calculation of damages. The primary issue raised is whether the plaintiffs can claim that the government has improperly recorded certain overtime hours as administratively uncontrollable overtime ("AUO"). After oral argument and for the reasons stated below, plaintiffs' motion for reconsideration is denied, plaintiffs' motion for summary judgment is denied, and defendant's cross motion for summary judgment is denied as moot.

## I. Motion for "Rehearing"

Although the motion is brought under Rule 59, it is more appropriately considered under Rule 83.2(f), Requests for Reconsideration of an Order. Rule 59 contemplates the prior entry of a final judgment. The court's April 5, 2000, decision was not final for purposes of appeal, hence rule 59 is inapplicable. The motion presents a difficult and, in this circuit, novel question: can federal employees recover interest under the Back Pay Act ("BPA" or "act") if they have succeeded in recovering overtime pay under the FLSA? Before turning to the merits of the issue, the court must determine if the issue is foreclosed by the prior ruling.

### A. Is Plaintiffs' Motion for Rehearing Untimely?

▮ Pursuant to Rule 83.2, plaintiffs' motion is untimely, as the rule requires that the motion be filed within ten days of the order. *See* RCFC 83.2(f). Nonetheless, pursuant to Rule 6(b), the time limit under Rule 83.2 may be extended by leave of the court. Furthermore, although generally a movant must show new evidence, supervening law, or a clearly erroneous decision in order to obtain reconsideration, this is not a limit on the court's ability to review its own decisions. *See Jamesbury Corp. v. Litton Indus. Products, Inc.,* 839 F.2d 1544, 1550 (Fed.Cir.1988); *McGowan v. Secretary of H.H.S.,* 31 Fed.Cl.

734, 737 (1994). Until final judgment is entered in a case, the court retains the power to revisit its earlier decisions. *See Jamesbury Corp.,* 839 F.2d at 1550 ("Orderly and efficient case administration suggests that questions once decided not be subject to continued argument, but the court has the power to reconsider its decisions until a judgment is entered."); *McGowan,* 31 Fed.Cl. at 737 (stating that the court may change any interlocutory decision up until the entry of final judgment). Thus, because final judgment has not been entered in this case, the court may revisit the issue of prejudgment interest. It is appropriate to do so here, because the issue is important and the law is unsettled.

### B. Merits of Plaintiffs' Motion

▮ The general rule is well-known: "In the absence of express congressional consent to the award of interest separate from a general waiver of immunity to suit, the United States is immune from an interest award." *Library of Congress v. Shaw,* 478 U.S. 310, 314, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986). Moreover, when Congress waives sovereign immunity from interest, the waiver is typically within the statute itself. There is no rule, however, that prevents the waiver from being found in a separate statute. Thus, while the Court of Appeals for the Federal Circuit has held that the FLSA itself does not contain a waiver of immunity from prejudgment interest, *see Doyle v. United States,* 931 F.2d 1546, 1550 (Fed.Cir.1991), the question remains whether the BPA's interest provisions constitute the waiver.

▮ Only one court has addressed whether the BPA waives sovereign immunity from interest on FLSA awards involving federal employees, *Social Security Administration v. F.L.R.A.,* 201 F.3d 465 (D.C.Cir.2000). In that case, the D.C. Circuit held that the BPA did waive the government's immunity. The court included no discussion, merely referring to an earlier decision, *Brown v. Secretary of the Army,* 918 F.2d 214, 216 (1990), in which it held that Title VII awards were subject to prejudgment interest because of the BPA. *See* 201 F.3d at 468. *Brown,* in turn, relied on *Loeffler v. Frank,* 486 U.S.

549, 108 S.Ct. 1965, 100 L.Ed.2d 549 (1988), for the proposition that "the requisite express waiver [of sovereign immunity] could be supplied by a separate statute." 918 F.2d at 216.

The *Brown* decision is one of a series of cases coming to conflicting conclusions about whether the BPA waived sovereign immunity from interest on Title VII back pay awards. *Compare Woolf v. Bowles,* 57 F.3d 407, 410–11 (4th Cir.1995) (adopting *Brown's* interpretation of the BPA), *Edwards v. Lujan,* 40 F.3d 1152, 1154 (10th Cir.1994) (quoting *Brown,* 918 F.2d at 216, for proposition that "the [BPA], to extent of its coverage, waives the federal government's immunity against prejudgment interest on Title VII back pay awards . . .," but holding prejudgment interest is not available where the promotion at issue is discretionary), *Brown,* 918 F.2d at 216 (holding the BPA waives sovereign immunity from interest on Title VII claims), *with Arneson v. Callahan,* 128 F.3d 1243, 1246 (8th Cir.1997) (holding the BPA did not waive immunity from interest on Title VII awards), *Roepsch v. Bentsen,* 846 F.Supp. 1363, 1371 (E.D.Wis.1994) (same).

Defendant urges the court to adopt the reasoning of the Eighth Circuit in *Arneson* and the Eastern District of Wisconsin in *Roepsch.* It contends that the *Brown* decision should not be followed because it misinterpreted *Loeffler,* 486 U.S. 549, 108 S.Ct. 1965. Defendant offers in support other decisions criticizing *Brown. See Arneson,* 128 F.3d at 1246 ("Express and unequivocal Congressional waiver of sovereign immunity was not required in *Loeffler* because the postal service fit within the 'private commercial enterprise' exception to the no-interest rule."); *Roepsch,* 846 F.Supp. at 1371 (*"Loeffler's* impact should be limited to the nature of the governmental entity sued and the existence of a statute specifically concerned with that entity."). Defendant refers to the following language in *Brown:* "The government offers no convincing reason why the [BPA] does not supply the immunity waiver prescription absent in Title VII, *just as the [Postal Reorganization Act] does."* Resp. to Pl's Recons. Mot. at 12 (emphasis added). According to defendant, this statement reflects a misun-

derstanding of *Loeffler* because the BPA does not, similar to the Postal Reorganization Act, "contain an analogously broad waiver of sovereign immunity." Resp. to Pl's Recons. Mot. at 12.

*Loeffler* involved a Title VII suit against the Postal Service. 486 U.S. 549, 108 S.Ct. 1965. The Court held that the Postal Reorganization Act waived the government's immunity from prejudgment interest despite its lack of any direct connection to Title VII. *See id.* at 557, 108 S.Ct. 1965. The Court based its holding on the "private commercial entity" exception to the no-interest rule expressed in *Shaw*—Congress had "launch[ed] the Postal Service into the commercial world" and included in the Postal Reorganization Act a "sue and be sued" clause. *Id.* at 556, 108 S.Ct. 1965. Thus, it was "presumed Congress had waived any otherwise existing immunity of the Postal Service." *Id.* Because the private commercial entity exception applied, the Court found that "[t]he search for an express waiver of immunity from interest within Title VII, which is all that *Shaw* was about, [was] unnecessary." *Id.* at 565, 108 S.Ct. 1965.

We agree with defendant that *Brown* overstates the holding in *Loeffler. Brown* relies on *Loeffler* for the proposition that "the requisite express waiver could be supplied by a separate statute." 918 F.2d at 216. In fact, the Court in *Loeffler* held that an express waiver was not required because the Postal Reorganization Act put the Postal Service into the category of a private entity not entitled to a claim of sovereign immunity. 486 U.S. at 565, 108 S.Ct. 1965. *Loeffler* can be cited, however, for the proposition that an independent statute can provide a basis for assessing interest; it is certainly not inconsistent with *Brown.* The question thus remains whether *Social Security Administration,* 201 F.3d 465, is correct that the BPA contains the requisite waiver of sovereign immunity from interest. In answering this question, we proceed under the well-established principle that there must be an express consent by Congress in order to award interest against the government. *See Shaw,* 478 U.S. at 314, 106 S.Ct. 2957.

The BPA, in pertinent part, provides at § 5596(b):

> (b) (1) An employee of an agency who ... is found by appropriate authority under applicable law, rule, regulation, ... to have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay, allowances or differentials of the employee—
>
> (A) is entitled, on correction of the personnel action, to receive for the period for which the personnel action was in effect—
>
> (i) an amount equal to all or part of the pay, allowances ... which the employee normally would have earned or received during the period if the personnel action had not occurred ...;
>
> (2) An amount payable under paragraph (1)(A)(i) of this subsection shall be payable with interest.

5 U.S.C. § 5596(b) (1994 & Supp. V 1999). Thus, under paragraph (b)(2), if the back pay at issue is payable "under" paragraph (b)(1), there is plainly an express waiver of sovereign immunity.[1] The question, in short, is whether back pay recovered under the FLSA can be an amount "payable under paragraph (1)(A)(i)." Resolution of the issue is not without doubt.

A good argument can be made that this court's FLSA determination falls within the literal terms of the BPA. While the term "appropriate authority" is not defined by the statute, it is defined by regulations promulgated by the Office of Personnel Management ("OPM") to implement the act. *See* 5 C.F.R. § 550.803 (2000). An appropriate authority is "an entity having the authority in the case at hand to correct or direct the correction of an unjustified or unwarranted personnel action, including (a) a court ...." *Id.* The appropriate authority in actions for back pay in this court can be either the court itself or some other entity. *See Worthington v. United States*, 168 F.3d 24 (Fed.Cir.1999) (plaintiff sought to recover back pay where employing agency, as appropriate authority, determined personnel action was unwarranted); *Romero v. United States*, 38 F.3d 1204 (Fed.Cir.1994) (plaintiff sought to recover back pay under BPA asking the court, as an appropriate authority, to determine personnel action was unwarranted); *Alaniz v. Office of Personnel Mgmt.*, 728 F.2d 1460 (Fed. Cir.1984) (same).

In this case, the court made the determination that certain plaintiffs were improperly denied overtime pay because they were not exempt from the FLSA overtime provisions. *See Adams*, 44 Fed.Cl. 772. There is no question that the court was authorized to make that ruling.[2] *See Saraco v. United States*, 61 F.3d 863, 866 (Fed.Cir.1995) (holding that FLSA is money-mandating for Tucker Act purposes).

With respect to the balance of paragraph (b)(1), there is nothing in the text to indicate that the denial of FLSA overtime is excluded from the act's coverage. *See* 5 U.S.C. § 5596; *cf. Brown*, 918 F.2d at 216 (finding that in the BPA's text, there is "no hint of an exclusion of, or exemption for, federal sector Title VII adjudications"). Defendant argues,

---

1. The BPA's interest provision was added in 1987. *See* Pub.L. No. 100–202, 101 Stat. 1329–428 (codified as amended at 5 U.S.C. § 5596(b)(2)).

2. The fact that a suit for overtime compensation under the FLSA is outside the coverage of the Civil Service Reform Act ("CSRA") is neither fatal to jurisdiction nor to the invocation of the BPA. *See Worthington*, 168 F.3d at 26–7 (stating that money-mandating nature of underlying claim "does not end the inquiry" but that underlying claim must also be outside coverage of the CSRA in order to be appropriate authority under the BPA); *see also Bosco v. United States*, 931 F.2d 879 (Fed.Cir.1991) (holding that Court of Federal Claims has jurisdiction over suits for lost pay and restoration that fall outside the CSRA). The denial of FLSA overtime pay falls outside the CSRA's coverage because it does not constitute a removal, suspension, reduction in grade or pay, or furlough. *See* 5 U.S.C. § 7512 (1994) (enumerating types of personnel action covered by CSRA); *see also Worthington*, 168 F.3d at 26–27 (holding that underlying violation, being forced to work a compressed work schedule in violation of the Federal Employees Flexible and Compressed Work Schedules Act, does not fall within jurisdiction of CSRA); *Romero*, 38 F.3d at 1211 ("The present case involves a type of personnel action—withholding of pay for income tax purposes—that 'is not covered at all by the CSRA, for any employees.'") (citations omitted).

however, that the history of the BPA reflects a more limited purpose that does not embrace overtime pay: "[u]nlike the pay and overtime pay statutes, which authorize the payment of compensation for time worked, prior to the [BPA] there was no general statute authorizing ... pay to an employee for the time during which he or she was suspended or terminated, and, thus, not actually working." Resp. to Pl's Recons. Mot. at 14 (citing S.Rep. No.1962, 89th Cong., 2d Sess. 1–3, *reprinted in* 1966 U.S.Code Cong. & Admin. News 2097, 2097–99). The BPA, defendant argues, was enacted only to fill that narrow void. According to defendant, because plaintiffs have worked during the time for which they seek payment, the BPA is inapplicable.

This limitation does not appear in the text. Paragraph (b)(4) defines the required "personnel action" to include "the omission or failure to take an action or confer a benefit." 5 U.S.C. § 5596(b)(4). Regulations implemented by OPM define pay, allowances, and differentials to mean "pay, leave, and other monetary employment benefits to which an employee is entitled by statute ... and which are payable by the employing agency to an employee during periods of Federal employment." 5 C.F.R. § 550.803 (2000). Reversal of a determination to exempt an employee from overtime would thus appear to reflect an unwarranted or unjustified personnel action.

As support for its argument, however, defendant cites *United States v. Testan,* 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976), and *Carpenter v. United States,* 28 Fed.Cl. 195 (1993). In *Testan,* the Court stated that the BPA "was intended to provide a monetary remedy for wrongful reductions in grade, removals, suspensions, and 'other unwarranted or unjustified actions affecting pay or allowances [that] could occur in the course of reassignments and change from full-time to part-time work.'" 424 U.S. at 405–06, 96 S.Ct. 948 (citing S.Rep.No. 1062, 89th Cong., 2d Sess., 3 (1966)). Likewise, in *Carpenter,*

in explaining why the court had jurisdiction to hear a claim for attorney fees under the act "so long as there is an allegation that the employee has been restored to a previously appointed position," 28 Fed.Cl. at 199, this court stated "[t]he BPA presumes that a person has been restored nunc pro tunc to a previous appointment, which would, under the pay statutes, normally entitle someone to salary, but for the fact that the time was not actually 'worked.'" *Id.* at 198. Accordingly, "[t]he BPA bridges that gap and authorizes a court ... to give back pay as a remedy." *Id.* Defendant is correct that *Testan* and *Carpenter* describe the BPA as it relates to individuals who were suspended or removed and, therefore, did not work as a result of the personnel action.[3]

Although these decisions shed light on the BPA's purpose, the question remains whether the act nevertheless has a broader application. Two Federal Circuit decisions, for example, have applied the act to procedural errors and a failure to pay when the employee was working during the time the personnel action occurred. In *Alaniz,* 728 F.2d 1460, the court recognized that a procedural error met the BPA's definition of an unjustified or unwarranted "personnel action." Plaintiffs brought suit alleging, among other things, that OPM reduced their cost of living allowance ("COLA") benefits, as provided for by 5 U.S.C. § 5941 (1994 & Supp. V 1999), without following the notice and comment requirements of the Administrative Procedures Act ("APA"), 5 U.S.C. § 553 (1994). *See* 728 F.2d at 1467. The district court held for plaintiffs with respect to their APA challenge, and the Federal Circuit affirmed. *See* 728 F.2d at 1469. Plaintiffs also appealed the district court's holding that it could not reinstate the higher COLA rate for the period during which the illegal lower rates were in effect, thereby denying plaintiffs the difference between the COLA benefits they had received and the higher COLA benefits they should have received. *See id.* at 1469. The Federal Circuit held that the plaintiffs were

---

**3.** Unlike *Carpenter,* the personnel action at issue in *Testan* was not a suspension or removal. The plaintiffs in *Testan* sought compensation under the BPA for the time they were reclassified at a higher grade but not paid at the higher rate. *Id.*

at 405–06, 96 S.Ct. 948. The court found that the BPA did not create an exception to the well-established rule that a "federal employee is entitled to receive only the salary of the position to which he was appointed." *Id.*

entitled to recover the difference, stating that an " 'unwarranted personnel action,' for purposes of recovery under the [BPA], may result from procedural error." *Id.* at 1470 (quoting *Crimaldi v. United States,* 651 F.2d 151, 153 (2d Cir.1981)). Unlike the plaintiff in *Carpenter,* the plaintiffs in *Alaniz* had not suffered a wrongful discharge or suspension and were working throughout the period the personnel action took place.

In addition, in *Romero,* 38 F.3d 1204, the court recognized that the unlawful withholding of state income tax from the pay of federal employees subject to the tax constitutes a "personnel action" under the act. *See id.* at 1210. Plaintiffs sought to recover money withheld pursuant to what they alleged, and the court eventually held, was an unlawful income tax withholding agreement entered into by the Secretary of the Treasury and the Commonwealth of Puerto Rico under 5 U.S.C. § 5517 (1994 & Supp.1999). *See* 38 F.3d at 1204. The government conceded that under the Federal Circuit's decision in *Alaniz,* the BPA provided for the right to recover back pay.[4] *See Romero,* 38 F.3d at 1210. The court agreed and, pursuant to the BPA, awarded plaintiffs amounts unlawfully deducted. *See id.* at 1210–12. Again, just as in *Alaniz,* plaintiffs in *Romero* were not subject to a wrongful suspension or removal and were working throughout the time the personnel action took place. An "unjustified or unwarranted personnel action" under the BPA, in short, includes actions other than suspensions and removals. *See also Abramson v. United States,* 42 Fed. Cl. 326, 332–33 (1998) (supporting application of BPA beyond wrongful suspensions and terminations).

This understanding of the law is consistent with a 1978 change in the definition of a "personnel action." Until that year, the term did not include "the omission or failure to

take an action or confer a benefit." *See Spagnola v. Stockman,* 732 F.2d 908, 912 (Fed.Cir.1984) (explaining history of BPA's definition of "personnel action"). As the Federal Circuit explained, "[p]reviously, the [BPA] literally permitted recovery only when the employee incurred 'a withdrawal or reduction' in pay . . . thus omitting in words to blanket failures to make additional payments that were mandated by law, e.g., a statutory periodic increase or a benefit conferred by a non-discretionary administrative regulation." 732 F.2d at 912.

This interpretation of the BPA was applied in *Abramson,* 42 Fed.Cl. 326. In an earlier opinion, the court had held that certain employees of the Government Printing Office ("GPO") were entitled to the overtime pay provided by 5 U.S.C. § 5544(a) (1994 & Supp. V 1999), "to the exclusion of the Kiess Act, 44 U.S.C. § 305(b) (1994 & Supp. IV 1998), which allows the Public Printer to grant compensatory leave instead of overtime pay." *Abramson v. United States,* 40 Fed.Cl. 204, 206 (1998). In a later opinion,[5] the court held that the government was liable to plaintiffs under the Kiess Act for overtime pay. *See* 42 Fed.Cl. at 328. The court held plaintiffs were entitled to a rate of time and a half for overtime worked pursuant to 5 U.S.C. § 5544(a). *See id.* at 329. Plaintiffs in *Abramson* also asserted a right to damages under the BPA. *See id.* The court, noting that the "definition [of personnel action] has evolved," held that the denial of monetary overtime pay under the Kiess Act fell within the act's scope. *Id.* at 333. Finding the rest of the BPA's requirements met, the court held plaintiffs were entitled to interest under the BPA as it provided greater relief than 5 U.S.C. § 5544. *See id.*

Defendant also suggested during oral argument that the act was limited to Title 5

---

4. Although the government conceded this point, it went on to argue that *Alaniz* was no longer good law under the Supreme Court's opinion in *United States v. Fausto,* 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988). *See Romero,* 38 F.3d at 1210. The court in *Romero* rejected the argument citing its decision in *Bosco,* 931 F.2d 879, which held the CSRA did not divest the court of all jurisdiction to review any personnel action. *Romero,* 38 F.3d at 1211.

5. The court's earlier opinion, found at 40 Fed.Cl. 204, denied the government's motion to dismiss on the grounds that plaintiffs did not fall within the scope of 5 U.S.C. § 5544(a), and granted plaintiffs cross-motion for summary judgment seeking to establish that they fell within the scope of that statute. 40 Fed.Cl. at 206. The court's holding in its later opinion was based on this previous ruling and the law of the case doctrine. 42 Fed.Cl. at 329.

back pay awards. The text of the BPA does not express that limitation, however. In fact, the BPA makes no specific mention of any other statutes. This is not surprising, moreover, because, as the Federal Circuit explained in *Spagnola,* the BPA is derivative in nature. 732 F.2d at 912. The source of the money will always be external. *See also Worthington,* 168 F.3d at 26 ("The [BPA] is ... a 'money-mandating' statute when based on violations of statutes or regulations covered by the Tucker Act."); *United States v. Connolly,* 716 F.2d 882, 887 (Fed.Cir.1983) ("The [BPA] is merely derivative in application; it is not itself a jurisdictional statute.").

There is thus nothing in the literal terms of the BPA to dictate that a failure to pay overtime would be treated differently than cost of living allowances or improperly withheld pay. The failure to pay overtime is a "failure to take an action or confer a benefit," and one which results in the "withdrawal or reduction in ... pay."[6] 5 U.S.C. § 5596(b)(1). The reversal of a decision to exempt an employee from overtime pay is a decision by an appropriate authority that an "unjustified or unwarranted personnel action" has taken place.

Defendant's better argument, however, draws from the FLSA. Although the BPA is always derivative in the sense that the government has presumably violated some employment norm outside the BPA itself, in some cases the award of back pay (as distinct from interest and attorneys fees) would be duplicative, for example, in the case of the FLSA. Defendant argues that the waiver of sovereign immunity from interest expressed in the BPA does not apply in such circumstances because there is an independent ground for recovery of back pay. In the case of overtime pay under the FLSA, the statute itself affords the remedy. 29 U.S.C. § 216(b) ("An employer who violates ... section 207 of this title .. shall be liable .. in the amount of [the affected employees] ... unpaid overtime compensation ... "). The BPA, thus, would be unnecessary to recover *backpay,* and, hence, it is unavailable to recover interest. Defendant proposes a limit, in other words, on the extent to which the BPA can be invoked, drawn at the point at which it is needed for the award of back pay. If it is not needed, as in an FLSA action, it cannot be invoked with respect to the other remedial aspects, such as interest and attorney fees.

It is true that, unlike the statutes at issue in *Alaniz* and *Romero,* the FLSA contains its own remedial provisions. *Compare* 29 U.S.C. § 216(b) *with* 5 U.S.C. §§ 5517, 5941. The FLSA's remedial provision is a source of back pay for individuals who violate the FLSA's overtime requirements. 29 U.S.C. § 216(b). Defendant argues, therefore, that had Congress intended to waive the government's sovereign immunity from interest on amounts awarded under the FLSA, it "would have mentioned the FLSA when it amended the [BPA in 1987 to provide for interest on damage awards.]." Resp. to Pl's Recons. Mot. at 13.

The Eighth Circuit in *Arneson* relied in part on this argument to reject the notion that the BPA evidences a clear and unequivocal consent to interest awards against the government under Title VII. 128 F.3d at 1247 ("The amended [BPA] does not even mention Title VII ...."). In *Arneson,* the court held that in order "to provide the sovereign immunity waiver absent in Title VII, the [BPA] must, at a minimum, unequivocally express Congress's intent to waive sovereign immunity under Title VII." *Id.*

This argument, however, only goes so far. First, because, Congress plainly waived sovereign immunity as to interest in some cir-

---

**6.** The court notes that the change in the type of "personnel action" covered by the act does not appear to have escaped Congress' attention. The action in *Alaniz,* 728 F.2d 1460, was specifically referred to by Congress when the BPA was amended in 1987 to provide for interest:

The purpose of this section is to provide full compensation to Federal employees who bring valid claims for back pay by granting a right to collect interest on awards under the Back Pay Act of 1966. This provision to grant interest on back pay shall apply in full to all members of the plaintiff classes certified by the courts in *Karamatsu v. U.S.,* No. 224–85C (U.S. Claims Court) and *Alaniz v. Office of Personnel Management, et al.,* No. A81–072 Civ. (U.S.D.C. for the District of Alaska).

H.R. No. 100–415, 100th Cong., 1st Sess., 19 (1987).

cumstances, and those circumstances are not directly referenced in the BPA. Second, the contrast to *Alaniz* and *Romero* is not complete. Those actions proceeded under the Tucker Act, which constitutes an "external" remedy because the substantive provisions at issue were considered "money mandating." Third, the Federal Circuit has indicated an awareness that the substantive provision invoked can constitute its own back pay directive. Indeed, it can be argued that the court in *Spagnola* imposes the apparently elliptical requirement that the related statute itself must constitute a source of money: "Unless some other provision of law commands payment of money to the employee for the 'unjustified or unwarranted personnel action,' the [BPA] is inapplicable." 732 F.2d at 912.

The real inconsistency between plaintiffs' construction of the BPA and the FLSA relates, however, to a different matter. The FLSA is not only a source of back pay, it provides a comprehensive remedy. For example, in addition to back pay, successful federal claimants can seek liquidated damages and attorney's fees and costs. *See* 29 U.S.C. § 216(b). Not only is the BPA not necessary, in other words, for plaintiffs to recover back pay, the plaintiffs have already invoked an integrated remedy, in the form of the FLSA.

One aspect of that remedy—liquidated damages—is particularly troublesome for plaintiffs' position. Defendant contends that liquidated damages, which are available under the FLSA, serve the same purpose as interest, and thus plaintiffs in FLSA actions are meant to receive the former but not the latter. As support for its argument, defendant cites the Supreme Court's decision in *Brooklyn Savings Bank v. O'Neil,* 324 U.S. 697, 65 S.Ct. 895, 89 L.Ed. 1296 (1945), which held that the FLSA's liquidated damages provision precluded the award of interest: "Congress by enumerating sums recoverable

under [216(b) ] meant to preclude recovery of interest on minimum wages and liquidated damages." Resp. to Pl's Recons. Mot. at 14 (citing *Brooklyn Savings,* 324 U.S. at 715–16, 65 S.Ct. 895). The precise holding of *Brooklyn Savings* is that interest was not recoverable where an individual had received both back pay and liquidated damages under the FLSA.[7] *Id.* at 715–16, 65 S.Ct. 895.

When *Brooklyn Savings* was decided, liquidated damages under the FLSA were mandatory. That changed in 1947, when Congress, through the Portal–to–Portal Act, made their recovery discretionary. 29 U.S.C. § 260. Section 260 provides that if the government's actions were taken in good faith and upon reasonable grounds, it is within the court's discretion to "award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title [an amount equal to the payment of wages lost]." 29 U.S.C. § 260. Because liquidated damages are no longer mandatory and the award is discretionary, the rationale for liquidated damages is arguably different than the one relied on in *Brooklyn Savings.* Courts nevertheless, continue to hold that liquidated damages under the FLSA serve the purpose of interest, and, thus, the recovery of both is not allowed. *See Uphoff v. Elegant Bath, Ltd.,* 176 F.3d 399, 406 (7th Cir.1999); *Braswell v. City of El Dorado,* 187 F.3d 954, 957 (8th Cir.1999); *Department of Labor v. City of Sapulpa,* 30 F.3d 1285, 1290 (10th Cir.1994) *Martin v. Cooper Electric Supply Co.,* 940 F.2d 896, 910–11 (3rd Cir.1991); *Brock v. Superior Care, Inc.,* 840 F.2d 1054, 1064 (2d Cir.1988); *C.D. Joiner v. City of Macon,* 814 F.2d 1537, 1539 (11th Cir.1987); *Masters v. Maryland Mgmt. Co.,* 493 F.2d 1329, 1334 (4th Cir. 1974).

Furthermore, the Federal Circuit has held that the discretion afforded the court in awarding FLSA liquidated damages against the government "does not extend to a liqui-

---

7. The plaintiffs in *Brooklyn Savings* recovered both back pay and liquidated damages. *Id.* at 714–716, 65 S.Ct. 895. The Court held that to allow "an employee to recover the basic statutory wage and liquidated damages, with interest, would have the effect of giving an employee double compensation for damages arising from

delay in the payment of the basic minimum wages." 324 U.S. at 715, 65 S.Ct. 895. In the case at bar, however, the court has previously denied liquidated damages, so interest cannot be compounded, which was the concern expressed in *Brooklyn Savings.*

dated damages award for interest or delay damages . . . ." *Doyle,* 931 F.2d at 1550. The court based its holding on the fact that there was no express waiver of immunity from damages for the delay in the payment of overtime wages, and absent such a waiver, liquidated damages could not be awarded if the real purpose was to pay interest. *See id.* (citing *Shaw,* 478 U.S. at 321–322, 106 S.Ct. 2957).

Despite the fact that liquidated damages can be thwarted on a showing of good faith, in other words, they are, at least in part, seen as a substitute for interest. As the case law reflects, even in private sector cases, interest and liquidated damages are typically not awarded. If plaintiffs are correct, their entitlement to interest would, under the statute, be automatic. If interest and liquidated damages cannot both be awarded, in other words, liquidated damages would never be available under the FLSA in an action brought against the United States. In essence, liquidated damages would be read out of the FLSA. This result is so at odds with the FLSA remedy Congress created that we could not adopt it unless the waiver were plain. *See Shaw,* 478 U.S. at 314, 106 S.Ct. 2957 ("In the absence of express congressional consent to the award of interest separate from a general waiver of immunity to suit, the United States is immune from an interest award."). It is not. Although the issue is far from clear, we thus hold that Congress did not expressly waive, through the BPA, the government's immunity from interest on FLSA back pay awards.

## II.  Motions for Summary Judgment on Calculation of Damages

█ The FLSA entitles plaintiffs to one and one half times an employee's hourly regular rate of pay for every hour of overtime worked. 29 U.S.C. § 207(a). Pertinent to the summary judgment motions before the court are those overtime hours worked by plaintiffs which were recorded by the government as administratively uncontrollable overtime ("AUO") pursuant to 5 U.S.C. § 5545(c) (2) (1994) ("AUO statute"). AUO hours are overtime hours which cannot be administratively controlled and which require a substantial amount of irregular overtime work. *Id.* Individuals who qualify for AUO hours are not paid on an hourly basis for their overtime hours, but receive a percentage of their basic pay rate as compensation. *Id.* In contrast to AUO hours are overtime hours that can be administratively controlled and, therefore, regularly scheduled. These controllable hours are paid pursuant to 5 U.S.C. § 5542. Where plaintiffs are entitled to FLSA overtime, the amount of overtime pay they are entitled to is based on a formula which takes into account the overtime hours they have worked, whether they are characterized as AUO or regularly scheduled. Under this formula, for every AUO hour worked, plaintiffs are remunerated at one half their regular rate of pay,[8] 5 C.F.R. § 551.501(a)(1) (2000), while for every regularly scheduled overtime hour worked, plaintiffs are paid at their straight rate of pay *plus* one half their regular rate of pay. The net effect is that under the FLSA, a plaintiffs' entitlement to overtime pay is less for an hour recorded as administratively uncontrollable than it is for an hour recorded as regular overtime.

Plaintiffs argue that the government has improperly recorded a majority of their overtime hours as administratively uncontrollable. On that assumption, plaintiffs argue, none of their overtime hours should be considered AUO for purposes of calculating damages under the FLSA.[9] In plaintiffs' view, they are not procedurally barred from raising the AUO issue because it merely goes to the calculation of damages. Defendant counters that plaintiffs' argument goes beyond proving damages and improperly raises

---

8. To be sure, plaintiffs are entitled to remuneration for every hour of AUO overtime at the straight rate and one half of the regular rate. However, because any AUO hours worked are deemed to have been paid already at the straight rate, the government is only required to remunerate the plaintiffs for those hours at one half the regular rate.

9. Alternatively, plaintiffs requested that if the court should decline to hold that *none* of the hours be deemed non-AUO, it should hold instead that 20 hours be considered non-AUO.

a new theory of liability. It argues that plaintiffs should have pled this violation in their complaint and that they are procedurally barred from raising it now. For the reasons stated below, the court agrees with defendant and holds that plaintiffs are barred from raising the claim.

Rule 8(a) of the Rules of the Court of the Court of Federal Claims provides that "[a] pleading ... shall contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a). The purpose behind Rule 8 is to give the other party "fair notice" of the claims against it. *See Conley v. Gibson*, 355 U.S. 41, 47–8, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (discussing Rule 8 of the Federal Rules of Civil Procedure which is substantively similar).

The court agrees with plaintiffs that the fact that they have received AUO compensation is a relevant fact in a damages calculation. The compensation received and the number of hours recorded as AUO are used to determine an employee's straight and regular rates of pay, which, in turn, are used to determine the amount of FLSA overtime owed. 5 C.F.R. §§ 551.511—551.512. A challenge to the classification of those hours, however, is not implicit in the complaint.

To accept the merits of plaintiffs' AUO argument, the court would have to make the determination that the overtime hours they worked were capable of being controlled and regularly scheduled. Those hours thus would have been paid pursuant to 5 U.S.C. § 5542, and could not have been paid under 5 U.S.C. § 5545. This is the same type of determination made by the court in *Buchan v. United States*, 31 Fed.Cl. 496 (1994), the case which plaintiffs urge should guide the court's analysis. What plaintiffs overlook, however, is that the facts that go into this determination have heretofore not been rele-

vant to this case. The court's FLSA liability determination can be applied to the overtime hours worked by plaintiffs without any recharacterization of those hours. The fact that their compensation has previously included AUO, in other words, was not inconsistent with the FLSA exemption determination or the recovery of additional pay.

The government was on notice that if found liable for improperly classifying certain plaintiffs as exempt, it would have to pay plaintiffs the overtime to which they were entitled under the FLSA. 29 U.S.C. §§ 207, 216(b). Defendant thus might have to pay the straight rate plus one half the regular rate for every regularly scheduled overtime hour in addition to one half the regular rate for any AUO hours worked. *See* 29 U.S.C. § 207; 5 C.F.R. §§ 551.501—513. The government was not on notice, however, that it might have to pay the straight rate *plus* the regular rate on hours that until now were presumably correctly classified as AUO. The evidence that plaintiffs would need to put forward to show that their overtime was not "administratively uncontrollable" goes to a substantive and disputed issue totally unrelated to the matter actually tried. All of this counsels against plaintiffs being able to raise the AUO argument.[10]

Plaintiffs are barred at this stage from raising a challenge to the government's classification of certain overtime hours as administratively uncontrollable. Plaintiffs' motion for partial summary judgment is thus denied. Because the merits of the motion are not reached, defendant's cross motion for summary judgment is rendered moot.

### CONCLUSION

For the reasons stated above, plaintiffs' motion for reconsideration is denied, plain-

---

**10.** Furthermore, plaintiffs' current claim should have been separately pled because different limitations periods would apply. If this court accepts plaintiffs' new claim, plaintiffs would first have to establish that hours were improperly treated as AUO under section 5545; they should have been recorded under section 5542. The applicable statute of limitations under the Tucker Act for Title 5 claims is six years pursuant to 28 U.S.C. § 2501 (1994). *See Acton v. United States*, 932 F.2d 1464, 1465–66 (Fed.Cir.1991) (holding

that limitations period for the statutory source of overtime entitlement controls and, therefore, where plaintiffs entitlement is based on Title 5, not the FLSA, the six year limitations period pursuant to 28 U.S.C. § 2501 applies). Unlike the limitations period for Title 5 claims, an improper exemption action under the FLSA must be brought within two or three years, depending on whether the violation was "willful." *See* 29 U.S.C. § 255.

 

tiffs' motion for summary judgment is denied, and defendant's cross motion for summary judgment is denied as moot. The parties are directed to confer and jointly propose on or before March 14, 2001, a means by which this ruling and all prior rulings in this case will be applied to individual successful plaintiffs.[11]

**11.** Plaintiffs Loren Nichols and Paul Beeson are the subject of separate pending cross-motions for summary judgment.