**Rowdy ADAMS, et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

No. 96–93C.

United States Court of Federal Claims.

April 5, 2000.

Everett L. Bobbitt, San Diego, California, argued for plaintiffs. With him on the briefs was Sanford A. Toyen, San Diego, California.

Agnes M. Brown, U.S. Department of Justice, Washington, D.C., argued for defendant. With her on the briefs were Frank W. Hunger, Assistant Attorney General, and David M. Cohen, Director, U.S. Department of Justice, Washington, D.C., and Peter Gregory, U.S. Immigration & Naturalization Service, Washington, D.C., of counsel.

## OPINION

BRUGGINK, Judge.

This is an action for overtime pay by approximately 350 United States Border Patrol agents, brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219 (1994) (hereafter, relevant provisions of Title 29 are referred to as "Section ___."). After an earlier trial, we held that certain supervisory agents were not exempt from overtime pay. *Adams v. United States*, 44 Fed.Cl. 772 (1999). In other words, they were improperly denied additional pay. Other grades and positions within the Border Patrol were held to be exempt and not entitled to overtime pay. The matter is now pending on cross motions addressed to certain remaining damages issues.

## BACKGROUND

There is a statutory presumption that employees are to be compensated for overtime work at a rate of at least one-and-one-half times the employee's regular rate of pay. *See* Section 207(a). However, "bona fide executive, administrative, or professional" employees are exempt from the FLSA's overtime provisions. Section 213(a). The executive exemption was the only one asserted in this case.

At the time the suit was filed in 1996, the applicable OPM regulation defined an executive employee as a:

supervisor, foreman, or manager who manages a Federal agency or any subdivision thereof (including the lowest recognized organizational unit with a continuing func-

tion) and regularly and customarily directs the work of at least three subordinate employees (excluding support employees) and meets all the following criteria:

(a) The employee's primary duty consists of management or supervision. The primary duty requirement is met if the employee—

(1) Has authority to select or remove, and advance in pay and promote, or make any other status changes of subordinate employees, or has authority to suggest and recommend such actions with particular consideration given to these suggestions and recommendations; and

(2) Customarily and regularly exercises discretion and independent judgment in such activities as work planning and organization; work assignment, direction, review, and evaluation; and other aspects of management of subordinates, including personnel administration.

5 C.F.R. § 551.204 (1997).[1]

Of the three general requirements set out above-number of employees, lowest organizational unit, primary duty test-the court held that the government had established that all of the relevant positions met the primary duty test, with the exception of the SBPAs. *Adams*, 44 Fed.Cl. at 780–81. As to one category of employees, GS–12 Supervisory Border Patrol Agents ("SBPAs") (first-line supervisors to BPAs, i.e., the lowest level supervisors within the agency), the court observed that "the work of the SBPAs probably meets the primary duty test," *id.*, but, because it went on to hold that the "lowest recognized organizational unit" test was not met, it did not make ultimate findings in that respect. It also found, however, that four employees (Kern, Lasher, Caver and Johnston) did not supervise the requisite number of employees. Because the three criteria are in the conjunctive, Kern, Lasher, Caver, Johnston, and the SBPAs were found to be entitled to overtime pay.

The court's holding with respect to "lowest recognized organizational unit" is the one most directly at issue with respect to dam-

ages. A brief review of how the court came to the conclusion it did is thus appropriate.

In 1975, OPM issued an advisory letter, FPM Letter 551–7. In it, the agency defines a recognized organizational unit as:

An established and defined organizational entity with regularly assigned employees. This requirement distinguishes supervisors who are responsible for planning and accomplishing a continuing workload from "leaders" who head temporary groups formed to perform a special assignment of limited duration, or who direct the work of other employees assigned to a project but do not exercise full supervision over such employees. Leaders of this nature do not qualify for exemption as executive employees.

FPM Letter 551–7 § B(1)(b). Although this letter has a checkered history, we held that it captured the relevant standard. *See Adams*, 44 Fed.Cl. at 776.

Plaintiffs argued that the lowest organizational unit is the station. Prior to and during trial, defendant maintained that an SBPA and the Border Patrol Agents (BPAs) assigned to him administratively constituted the lowest recognized organizational unit within the Border Patrol, although it could not offer a name for this group. In its post-trial briefing, the government apparently conceded the point and offered the view that "the lowest recognized organizational unit with a continuing function is a shift of border patrol agents, and the FOS [Field Operations Supervisors] or Watch Commander is the official who is responsible for supervising or managing the shift." Def.'s Br. at 9. The court agreed, concluding that a shift within a border patrol station is the lowest ongoing organizational unit. The result was that the GS–12 SBPA supervisors did not meet the regulatory test for exemption.

The issues raised in the pending cross motions have to do with the way damages are calculated. As explained more fully below, the successful plaintiffs can recover back pay, plus an equal amount as liquidated damages.

---

1. This regulation was changed in material ways and renumbered as § 551.205 at the end of 1997. The number of employees supervised was low-

ered to two, and the requirement that those subordinates not be support staff was dropped. *See* 5 C.F.R. § 551.205 (1999).

Section 216(b). The first question is whether the two or three year limitations period applies. This, in turn, depends on whether the violation was "willful." Section 255. The second question is whether the court will reduce or eliminate liquidated damages on a showing by the employer that it acted in good faith and had "reasonable grounds for believing that [the] act or omission was not a violation of the Fair Labor Standards Act...." Section 260.[2] The questions, then, are whether, in erroneously classifying certain plaintiffs as exempt, defendant acted willfully, in bad faith, or without reasonable basis in the law.

These inquiries did not feature directly in the trial on liability. Instead the parties have put forward arguments based on limited additional evidence, legal presumptions, and burdens of proof. The evidence plaintiffs offer consists of excerpts from defendant's discovery responses, and the deposition of Eulalia Robinson, a personnel specialist at the Immigration and Naturalization Service (the Border Patrol's parent organization). Ms. Robinson was directly involved in the original determination to classify the SBPA positions as exempt. This occurred approximately twenty years ago. Plaintiffs' counsel queried Ms. Robinson during a deposition as to various elements of the executive exemption. He asked her to list the factors she considered in making the exemption determination. She referred to: the need to supervise the minimum number of employees, that "[t]hey direct the work to be accomplished, they hold the subordinates accountable for the work being performed and they evaluate the work that's being done...." Robinson Dep. Tr. pp. 12–13. She made no reference to the "lowest recognized organizational unit" test, although she was not specifically asked about it either. She does say that, "At the time, I would have looked at whatever the criteria ... that [are] stated on the executive exemption.... I know it [sic] looked at the whole thing." *Id.* p. 16.

In its answers to interrogatories, defendant states that it did not conduct a study of the time spent on various duties performed by the plaintiff Border Patrol agents. The only other factual referent for the pending motions is the trial record itself.

## DISCUSSION

■ The two questions here-whether the three year limitations period applies because of willful conduct and whether liquidated damages are waived because the employer acted in good faith and reasonably-are unique because of who the employer is in this case. As defendant points out, it has become axiomatic that "the government, unlike private parties, is assumed always to act in good faith, subject only to an extremely difficult showing by plaintiff to the contrary." *Torncello v. United States,* 231 Ct.Cl. 20, 45, 681 F.2d 756, 770 (1982). Indeed, "it requires 'well-nigh irrefragable proof' to induce the court to abandon the presumption of good faith dealing." *Kalvar Corp. v. United States,* 211 Ct.Cl. 192, 198–99, 543 F.2d 1298, 1301–02 (1976), *cert. denied,* 434 U.S. 830, 98 S.Ct. 112, 54 L.Ed.2d 89 (1977). *Torncello* and *Kalvar* involved contract claims. The government has not cited cases enforcing a similar presumption in an overtime pay claim involving the United States. The question becomes, does this traditional presumption have any relevance in the context of the FLSA?

■ With respect to the applicable limitations period, this presumption of good faith is not problematic. It is established that the employee bears the burden of showing that the employer acted "willfully." *See* Section 255; *Abbott v. United States,* 41 Fed.Cl. 553, 569 (1998). The Supreme Court has stated that employer conduct is willful for purposes of the FLSA if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.,*

---

**2.** In its briefing, although not in oral argument, plaintiffs also advance an alternative argument that they are entitled to interest if the court holds they cannot collect liquidated damages. It is well-settled, however, that interest does not run against the United States in the absence of a contract provision or an explicit statutory waiver of sovereign immunity. *See Doyle v. United States,* 931 F.2d 1546, 1550 (Fed.Cir.1991).

486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988).

■ As to the second issue, liquidated damages, the normal presumption of good faith conduct runs squarely counter to the operation of Sections 216(b) and 260. The net effect of those provisions is that the employer is presumed to be liable for liquidated damages unless it can establish a defense based on good faith and reasonable conduct. No exception is set out in the code for a government defendant. The general presumption referred to in *Torncello* is thus inconsistent with the statute. We believe the conflict should be resolved by deferring to what Congress mandated in the statutory provisions, rather than by applying the more general, judge-made presumption of good faith. It is up to the employer, then, in this case the United States, to show that it acted in good faith and with reasonable grounds for believing that plaintiffs were not entitled to overtime pay.

Sections 216(b) (liquidated damages) and 255 (an extra year of recovery) thus operate independently, and in some respect, at odds in terms of presumptions and burdens of proof. The conflict is more apparent than real, however. Plaintiffs are presumed entitled to liquidated damages unless the government carries its burden of proof that it acted in good faith and reasonably. Plaintiffs are not entitled to a third year of back pay unless they can carry their burden of proving that the government acted willfully. The presumption that government employees act in good faith cannot be applied in the first instance and is immaterial in the second. Because the burdens of proof do not rest on the same parties, the result could be that either party could win or lose on either issue without any inconsistency. The government could be unsuccessful, for instance, in thwarting liquidated damages and yet plaintiff could be unsuccessful in obtaining a third year of back pay.

With respect to the present inquiries, the court is sympathetic with the problem faced by the classifiers. The Border Patrol has organized itself in functional ways which do not neatly lend themselves to determining the lowest organizational unit under the OPM standards. As became apparent at trial, SBPAs perform two types of supervisory function. For purposes of personnel administration only, each of the SBPAs is assigned six to eight BPAs at the beginning of the year. The locus for personnel administration and work scheduling is the station office. The second aspect of supervisory responsibility of the SBPAs takes place in the field.[3] Work in the field is organized around one of the three eight-hour shifts. Each shift is under the direction of one or more FOSs or Watch Commanders. Typically, each shift has several SBPAs. If an SBPA is rotated to a different assignment, the BPAs under him are generally not reassigned with him.

In the field, the SBPAs are in charge of the group of agents assigned to them for that day. The group of BPAs assigned to an SBPA typically varies from day to day and is not determined by which BPAs are assigned to the SBPA for administrative purposes. This changing field assemblage of agents plus supervisor had functional relevance-at least on a daily basis-to supervisors in the field. The two supervisory functions of the SBPAs—field supervision and personnel administration—are thus separately implemented.

It is not surprising under these circumstances that the classifiers would treat the SBPA and the BPA's assigned to him for administrative purposes as a unit. Within the terms of the 1975 OPM letter, the BPAs were "regularly assigned." In a "top down" bureaucratic sense, a classifier understandably might consider this "team" an organizational unit for FLSA purposes. It is the entity from which personnel paperwork winds its way up the chain of command. At a minimum, this was a close question for the court. The Court of Claims in *Beebe v. United States*, 226 Ct.Cl. 308, 328, 640 F.2d 1283, 1295 (1981), held that it is relevant to the "reasonable grounds" inquiry under Sec-

---

**3.** As explained below, the court rejects plaintiffs' argument that field supervision does not satisfy the primary duty test of the executive exemption.

tion 260 that the question is "uncertain, ambiguous, or complex." There is no question that application of the organizational unit test was uncertain in the present circumstances.

Plaintiffs counter that, in her deposition testimony, Ms. Robinson did not list as a separate criterion the need to identify the lowest recognized organizational unit with a continuing function. She was asked for the criteria she applied, and responded, "whether they supervise a minimum of three subordinate employees .... [a]nd [whether] they are responsible for ... directing the work to be accomplished, holding the subordinates accountable for the work ..., evaluating how well they've accomplished the work." Robinson Dep. Tr., p. 9. She was asked if she was through with the list, and she responded that she was.

The court gives little weight to this discussion for four reasons. First, she was not asked directly whether she considered the factor. Second, she stated that "she looked at the whole thing," i.e., she applied whatever the test was to these positions. Third, the factors she did cite (number of employees, primary duty test) are clearly set out in the rule. The organizational unit test appears as a parenthetical in the introduction rather than as a listed criteria. Finally, Ms. Robinson testified that she considered the exemption status of the SBPAs approximately twenty years earlier. It is not surprising that her memory is not vivid. Under the circumstances, the court cannot conclude that the original classification reflects a less than diligent inquiry.

■ As to those employees who do not meet the organizational unit test, therefore, the court holds that the plaintiff has not carried its burden of demonstrating willfulness so as to warrant an extension of the limitations period. The government has carried its burden with respect to Section 260. The application of the test was, under the circumstances, uncertain. There is no reason to believe that the classifiers ignored any element of the test. And, considering that the other elements of the test were met (number of employees supervised, primary duty), we conclude that the decision to classi-

fy as exempt was done in good faith and that the agency had reasonable grounds for believing that the SBPA's were exempt.

■ The result is different with respect to those employees who did not supervise the requisite number of employees. As to the statute of limitations, the plaintiffs must show that the agency acted willfully, which means, with knowledge or reckless disregard. Reckless disregard, in turn, is defined in the regulations as "failure to make adequate inquiry into whether conduct is in compliance with the [FLSA]." 5 C.F.R. § 551.104. As to Larry Caver, the evidence showed that he supervised only one employee. *Res ipsa loquitur.* The agency is on notice of how many employees Caver supervised and there was no suggestion of confusion in that regard. The same observation obtains with respect to Royce Johnston and Gerald Kern, although in Johnston's case, adding the additional year may be a moot point, as he only supervised less than three employees for a brief period of time. As to Jerry Lasher, the evidence is considerably more equivocal. The agency was not willful in failing to detect that Lasher, who supervised six employees, was not supervising three nonsupport staff.

■ As to whether liquidated damages apply in the case of these four employees, the court concludes that the agency has not carried its burden of proof as to Kern, Johnston, and Caver. The only "fact" the court has to go on is Ms. Robinson's statement that she was aware of the criteria with respect to the number of employees at the time of original classification in the 1970s. There is a continuing obligation to monitor this factor, however, and it obviously was not met in the case of these three employees. As to Lasher, once again, the evidence of his shift from exempt to non-exempt status would probably not have been apparent.

## CONCLUSION

We hold that defendant has met its burden of establishing that its conduct with respect to the non-exempt SBPAs was not in bad faith and was not done without reasonable grounds under the statute. We also hold that the plaintiffs have failed to meet their

burden of proving that the agency's conduct with respect to those employees was willful. The two year statute of limitations thus applies. Accordingly, defendant's motion for summary judgment is granted as to the SBPAs. Defendant's motion is also granted in full as to Jerry Lasher. As to Kerns, Johnston, and Caver, plaintiffs' motion for summary judgment is granted in all respects. Accordingly, those employees are entitled to liquidated damages and a three year limitations period. Entry of judgment is deferred pending the parties' efforts at agreeing on the appropriate amount of damages.