**Aaron ANGELO, Jr., et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**Nos. 00–116 C, 00–1161 C.**

United States Court of Federal Claims.

June 27, 2003.

Everett L. Bobbitt, Bobbitt & Pinckard, APC, San Diego, California, for Plaintiffs, with whom on the briefs was Bradley M. Fields.

Allison A. Page (and Michael A. O'Connell, who gave notice of appearance as attorney of record on May 1, 2003), Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant, with whom were Robert D. McCallum, Jr., Assistant Attorney General, David M. Cohen, Director, and Donald E. Kinner, Assistant Director.

**OPINION**

DAMICH, Chief Judge.

## I. Introduction

This Fair Labor Standards Act (FLSA) case involves overtime pay claims of some 90 Plaintiffs employed by the Immigration and Naturalization Service (INS) or its subsidiary agency, the United States Border Patrol (Border Patrol). The Plaintiffs are generally divided into two groups: GS–9 Supervisory Detention Enforcement Officers (SDEOs) and GS–11 Detention Operations Supervisors (DOSs). The DOSs function as first-line supervisors to SDEOs and second-line supervisors to DEOs. This opinion addresses five discrete questions that the Court directed the parties to brief in an effort to narrow the remaining issues for trial.

For the reasons stated below, the Court: **GRANTS** Plaintiffs' motion to set May 28, 1999, as the commencement date of the claim of Plaintiff Eduardo Ramirez; **DENIES** Defendant's motion that the Court forego an award of liquidated damages to the SDEO Plaintiffs; **DENIES** Plaintiffs' motion that the Court find willful Defendant's actions exempting both the SDEO and DOS Plaintiffs; **DENIES** Plaintiffs' motion for an award of pre-judgment interest to the SDEOs, as mooted by the Court's determination, *infra*, on liquidated damages, or to the DOSs, should they prevail at trial; and **DENIES** Defendant's motion to construe the word "or" (as it first appears in the "primary duty test" of executive exemption) as wholly disjunctive.

## II. Background

In the course of the parties' earlier, competing motions for summary judgment on liability, the Government conceded, after certain discovery, that the SDEOs were non-exempt from the FLSA overtime compensation requirement, 29 U.S.C. § 216(b). On May 8, 2002, this Court denied the Government's motion and granted-in-part and denied-in-part the Plaintiffs' motion. In the opinion, this Court addressed, *inter alia*, the issue of the "salary-basis test" for executive exemption and the extent of *Chevron*-style deference [1] to regulations of the Office of Personnel Management (OPM),[2] held that the SDEOs were not law enforcement officers under the terms of 29 U.S.C. § 207(k), and determined that the DOSs did supervise a recognized organizational unit with continuing function, one of the three components of executive exemption.

Because the Government conceded liability to the SDEOs, the award of liquidated damages is the primary issue that remains as to those Plaintiffs. As to the DOSs, the issue of liability is still outstanding and turns on whether the Government can meet its burden of proving that the DOS Plaintiffs meet the "primary duty test," of which there are two remaining components of executive exemption. These two components of the primary duty test are whether those employees had authority to make or recommend certain personnel changes ("selecting, removing, advancing in pay, *or* promoting subordinate employees"), 5 C.F.R. § 551.205(a)(1) (emphasis added), which triggers the "or" question, and whether they "customarily and regularly exercise[d] discretion and independent judgment" in certain work-related activities, 5 C.F.R. § 551.205(a)(2). The determination of the Government's potential liability to the DOSs will require trial testimony, but the Court's construction herein of the first prong of the primary duty test and resolution of certain issues of law regarding damages assist both the parties and the Court in more narrowly framing the issues remaining for trial.

## III. Discussion

A. *The Claim of Plaintiff Ramirez Commenced May 28, 1999.*

Plaintiff Eduardo Ramirez is a GS–9 SDEO. His claim was first filed before the Court of Federal Claims in *Barnes v. United States*, # 97–150 C, on May 28, 1999.[3] Most of the other plaintiffs in *Barnes*, however, were primarily Supervisory Border Patrol Agents (SBPAs). According to the Plaintiffs in this case, they "realized that it made no

---

**1.** *See Billings v. United States*, 322 F.3d 1328, 1333 (Fed.Cir.2003) (Where "a statute being interpreted is silent or ambiguous with respect to a certain issue, 'the question for the court is whether the agency's [interpretation] is based on a permissible construction of the statute.' *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 848, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Agency interpretations of statutes, and in particular, those interpretations that are the products of notice-and-comment rulemaking promulgated in the exercise of authority delegated to the agency by Congress, are entitled to *Chevron* deference.").

**2.** OPM administers FLSA with respect to federal employees. *Billings*, 322 F.3d at 1331. Because the FLSA statute itself is silent on the definition of "executive" employee, OPM is empowered to implement regulations to administer the statute in this regard. *Id.* at 1333–34.

**3.** This is the date on which Mr. Ramirez was added to *Barnes* as an additional plaintiff by the filing of his executed consent form.

sense to litigate Ramirez's claims in the Barnes lawsuit when the identical issue was being litigated in the instant lawsuit on behalf of other GS–9 SDEOs." Pls.' Mot. to Set Accrual Date for Damages Relating to Eduardo Ramirez at 3. Accordingly, Mr. Ramirez was *also* added as a Plaintiff in the instant case when it was filed on March 6, 2000. On September 21, 2001, pursuant to Rule 21 of the Rules of the Court of Federal Claims (RCFC) ("Misjoinder and Non–Joinder of Parties"), the presiding judge in *Barnes* severed the Ramirez claim and that of certain other plaintiffs from the *Barnes* case, joined them with plaintiffs severed from yet another action, *Adams v. United States,* and placed them in a new action entitled *Bates v. United States,* # 96–931. On May 24, 2002, the Ramirez claim was then severed from *Bates,* assigned a separate docket number, # 00–1161, and transferred to this Chambers, to which the instant action was assigned when it was first filed, pursuant to Rule 40.1(b). By Order on May 30, 2002, *Ramirez v. United States,* docket number 00–1161, was consolidated with the instant action.

The question that arises is whether the Ramirez claim commenced on May 28, 1999, the date he was entered in the *Barnes* case, or approximately eight months later on March 6, 2000, the filing date of the instant action. Because Defendant has conceded liability for improper exemption of the SDEOs from overtime compensation, the commencement date of the Ramirez claim is significant to the calculation of his damages. Pursuant to 29 U.S.C. § 255(a), the statute of limitations for FLSA claims is generally two years (three years if the violation was willful). If Mr. Ramirez's complaint is held to have commenced on the date of the earlier filing in *Barnes,* then he will be entitled to reach back further in time in the calculation of damages due him for the Government's FLSA violation.

The Government properly notes that, in order to maintain a collective action under FLSA, a plaintiff must provide written consent to become a party plaintiff. 29 U.S.C. § 256. A FLSA plaintiff's claim

shall be considered to be commenced in the case of any individual claimant—

(a) on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; or

(b) if such written consent was not so filed or if his name did not so appear—on the subsequent date on which such written consent is filed in the court in which the action was commenced.

*Id.*

Because the complaint in *Barnes* was brought by the plaintiffs plainly citing their status there as SBPAs, a job classification inapplicable to Mr. Ramirez, he was clearly misjoined in that action. Thus, despite the severance and ultimate transfer of the original Ramirez complaint from *Barnes* to this action, Defendant argues that Mr. Ramirez's claim as an SDEO plaintiff was not perfected until the instant action was filed in March 2000. "Until March 6, 2000, Mr. Ramirez had yet to fulfill the statutory requirement of written consent to participate as a party plaintiff in this litigation *challenging the exempt status of SDEOs.*" Def.'s Opp'n to Pls.' Mot. at 3 (emphasis added).

On the other hand, the Ramirez claim under *Barnes* was merely severed, transferred to, and consolidated with the instant action; it was never dismissed. As RCFC 21 provides, "Misjoinder of parties is not ground for dismissal of an action .... Any claim against a party may be severed and proceeded with separately."

Upon the transfer and consolidation of Mr. Ramirez's "*Barnes*" claim in this Chambers with the instant action, this Court more accurately has before it *two* claims on behalf of Mr. Ramirez: the *Barnes* claim, perfected on May 28, 1999, seeking damages for unpaid overtime compensation purportedly as an SBPA; and the *Angelo* claim, perfected on March 6, 2000, seeking the same as an SDEO. The resolution of which claim should govern the commencement date of Mr. Ramirez's action turns on how to treat the *Barnes* claim, which then implicates RCFC 15, "Amended and Supplemental Pleadings."

RCFC 15 provides that, after a party's initial allowance to amend a pleading as a matter of course under certain conditions, "a party may amend the party's pleadings only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." The United States Supreme Court has noted that it is "contrary to the spirit of the Federal Rules of Civil Procedure" [4] to avoid decisions on the merits on the basis of "mere technicalities," and that the process of pleading should no longer be construed as "a game of skill" in which an inadvertent misstep denies a party the opportunity to test his claim. *Foman v. Davis*, 371 U.S. 178, 181–82, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). In the absence of circumstances such as bad faith, futility of amendment, undue delay, or undue prejudice to the opposing party, "the leave sought should, as the rules require, be 'freely given.'" *Id.* at 182, 83 S.Ct. 227. *See Bank of America, FSB v. United States*, 51 Fed.Cl. 500, 513 (2002) (Rule 15 tenets are fairness to the parties, including adequate notice and avoidance of prejudice, with the proper parties in a timely action on the merits).

This Court sees no undue prejudice to Defendant in construing the instant motion of Plaintiffs herein as a Rule 15 motion to amend the original Ramirez claim, pled in *Barnes* and subsequently consolidated here, to state a claim for FLSA damages pursuant to Mr. Ramirez's proper status as a Supervisory Detention Enforcement Officer. Defendant was aware, or should have been aware, from the time of Mr. Ramirez's *Barnes* claim, perfected in May 1999, that Mr. Ramirez was an SDEO, not a SBPA. Defendant has conceded liability for improper classification of the SDEOs as exempt. Such amendment of Mr. Ramirez's *Barnes* claim does not deprive Defendant of the opportunity to garner key facts or raise legal objections to the merits of this Plaintiff's claim, nor occasion other, similar prejudice. Its effect is merely to allow this Plaintiff to obtain more of the relief to which he is already entitled based on Defendant's concession of liability to the SDEO Plaintiffs generally.

Accordingly, the Court finds the commencement date of Mr. Ramirez's claim to be May 28, 1999; his claim in *Ramirez v. United States*, # 00–1161, is hereby amended to state his corrected status as an SDEO; and his claim in the instant action is dismissed as redundant.

B. *The SDEOs are Entitled to Liquidated Damages; The Court will Defer a Determination Whether Liquidated Damages Should be Awarded to the DOSs until after Trial.*

■ Upon a finding that plaintiffs were wrongfully denied overtime compensation, FLSA provides that liquidated damages, i.e., damages equal to the amount of overtime pay due (thus a "double" recovery), are mandatory. 29 U.S.C. § 216(b). If, however, an employer can show "to the satisfaction of the court" that its action was in "good faith" and with "reasonable grounds," then the court may, "in its sound discretion," award less than the full amount or no liquidated damages at all. 29 U.S.C. § 260. Thus, the defendant bears the burden of proof.[5] Although the Federal Circuit does not appear to have addressed the issue, the weight of authority of other circuits is that there is a "strong presumption under the statute in favor of doubling." *Shea v. Galaxie Lumber*, 152 F.3d 729, 733 (7th Cir.1998). "[D]ouble damages [are] the norm and single damages the exception." *Herman v. RSR Sec. Services*, 172 F.3d 132, 142 (2d Cir.1999).

Here, Defendant has moved the Court to exercise its discretion to deny liquidated damages to both the SDEOs and the DOSs. As the Court has not made a determination yet whether Defendant is liable to the DOSs with respect to overtime compensation, both parties have requested the opportunity to

---

4. The Rules of the Court of Federal Claims conform "to the extent practicable" with the Federal Rules of Civil Procedure (FRCP) and are guided by case law and the Advisory Committee Notes that accompany the FRCP. Rules Committee Note, Rules of the United States Court of Federal Claims, Revised May 1, 2002, at 1.

5. Defendant's counsel acknowledged this burden of proof at oral argument. Tr. 5:11–20, April 10, 2003.

supplement their briefs on this issue with pertinent trial testimony demonstrating the existence, or lack thereof, of good faith and reasonable grounds for the Government's classification of the DOSs as exempt.

In *Beebe v. United States,* 226 Ct.Cl. 308, 640 F.2d 1283 (1981), the court noted that the "good faith" requirement was subjective in nature and equates to "an honest intention to ascertain what the Fair Labor Standards Act requires and to act in accordance with it." *Id.* at 1295. A subjective inquiry involves the presentation of testimony.[6] *Id.* "Reasonable grounds," on the other hand, is an objective inquiry. *Id.* "Proof that the law is uncertain, ambiguous or complex may provide reasonable grounds for an employer's belief that he is in conformity with the Act, even though his belief is erroneous." *Id.* Defendant has argued that Government officials are presumed to have acted in good faith, citing holdings to that effect in contract actions, but this is a weak and feeble argument in the context of FLSA cases.[7] As has been persuasively observed,

> the normal presumption of good faith runs squarely counter to the operation of Section 216(b) and 260. The net effect of those provisions is that the employer is presumed to be liable for liquidated damages unless it can establish a defense based on good faith and reasonable conduct. No exception is set out in the code for a government defendant.

*Adams v. U.S.,* 46 Fed.Cl. 616, 620 (2000).

The burden of proving good faith is substantial. *Vega v. Gasper,* 36 F.3d 417, 427 (5th Cir.1994). In *Herman,* the 2d Circuit elaborated slightly on the definition of good faith: "To establish good faith, the employer must take active steps to ascertain the dictates of the FLSA and then act to comply

with them." *Herman,* 172 F.3d at 142. In this respect, Plaintiff makes a fair point in its brief in favor of liquidated damages:

> Although the "good faith" element of the test is subjective, it should not be sufficient for Defendant to simply state that it intended to comply with the FLSA. To allow an employer to demonstrate good faith by the mere recitation of its supposed good intentions would render the test meaningless. This Court must require Defendant to state meaningful facts that demonstrate that it attempted to ascertain the requirements of the FLSA and to act in accordance with it.

Pl.'s Opp'n Br. re: Liquidated Damages at 8.

The two-fold inquiry with respect to the SDEOs (good faith *and* reasonable grounds) is complicated by the Government's concession of liability, subsequent to a certain amount of discovery, first made in its opposition to Plaintiffs' motion for summary judgment.[8] The Government's concession, at that time, did not state precisely the reason it would not further contest the non-exemption of the SDEOs, but merely noted that it was continuing to maintain their status as law enforcement officers (which would implicate the extent of their compensation owed for overtime hours). D.'s Opp'n to P.'s Mot. Summ. J. and Cr–mot. at 2–3. The complication is that, in the absence of a reason for Defendant's concession, it is harder to determine if its initial categorization of the SDEOs as exempt was in good faith or reasonably based. The discussion below will illuminate this complication.

### 1. Defendant's "Proof" of Good Faith for its Determination of SDEO Liability is Weak.

In support of its instant motion asking the Court to exercise its discretion to deny liqui-

---

**6.** "Testimony," however, is not necessarily restricted to a witness's statements at trial, but may include statements under oath by affidavit or at deposition, Black's Law Dictionary 1485 (7th ed.1999).

**7.** Defendant's counsel further acknowledged that its argument to this effect was merely a "gloss." Tr. 6:22—8:9, April 10, 2003.

**8.** In the May 2002 opinion, this Court granted partial summary judgment for Plaintiffs implicitly on the issue of liability regarding the SDEOs

and explicitly on the basis that they were not law enforcement officers. The implicit finding was due to the Government's concession that the SDEOs were non-exempt. Because the Government simply conceded that issue, however, and did not state a reason for its concession, the course of the summary judgment litigation did not necessitate stating a reason either. This Court's opinion simply noted that "[D]efendant does not dispute that all GS–9 SDEO Plaintiffs are non-exempt and entitled to overtime pay under FLSA." May 8, 2002, Opinion at 8.

dated damages to the SDEO Plaintiffs, Defendant cites two grounds for its showing of good faith. The two grounds argued are that Ms. Eulalia Baptiste Robinson, the official who made the initial determination in 1988 that the SDEOs were exempt, based her determination on the position descriptions and the regulations (found at 5 C.F.R. Part 551 and the Federal Personnel Manual). *See* D.'s Mot. to Deny Liq. Damages at 5 (citing to attached Affidavit of Ms. Robinson). Defendant concludes, "Based upon these statements it is clear that Ms. Robinson had an honest intention to ascertain the requirements of the FLSA." *Id.*

Defendant also noted in passing that its concession that the SDEOs were non-exempt was made "as a result of facts revealed during discovery in this case . . . ." *Id.* at 2. It was not until the Government's Reply brief that this matter was spelled out. Plaintiffs' Response had argued, exhaustively, that Ms. Robinson failed the good faith test because she specifically admitted that she had not considered the required factor of supervision of a "recognized organizational unit with a continuing function." Pls.'Opp'n re: Liq. Damages at 3 (citing deposition testimony of Ms. Robinson). The Government's Reply noted that its concession was *not* based on their finding that the SDEOs had not supervised a recognized organizational unit:

> Instead, the decision that they were non-exempt was made after discovery revealed that in the field, GS–9s were not spending at least 80 percent of their time on supervisory duties.
>
> According to OPM regulations, GS–9 level law enforcement employees must spend 80 percent of their time on supervisory duties to be considered exempt under the FLSA. The Government has maintained that the GS–9 SDEOs are law enforcement officers pursuant to 29 U.S.C. § 207(k) and, therefore, subject to the 80 percent test. Now that the Court has ruled against the Government, finding that the GS–9 SDEOs are not law enforcement officers, the 80 percent test no longer applies to these plaintiffs.

D.'s Reply re: Liq. Damages at 1–2 (footnote omitted).

The regulations that Defendant refers to provide that, *in addition to the primary duty test* for executive exemption, law enforcement employees at such classifications as GS–9, *et al.*, must spend 80 percent or more of their time on supervisory work. 5 C.F.R. § 551.205(b)(2) (emphasis added).

In other words, the Government made its concession—that the SDEOs were non-exempt—in the briefing leading up to this Court's opinion on summary judgment, based on its determination during discovery that, even though they were law enforcement officers, they were not meeting the 80 percent test.

This inquiry goes to the Government's burden of *proving* good faith, and brings back the issue of whether Ms. Robinson showed the requisite "honest intentions" and took "active steps to ascertain the dictates of the FLSA and then act to comply with them." *Herman,* 172 F.3d at 142. It should not matter, for the *good faith* inquiry, what the basis was upon which the Government eventually conceded liability (although it may frame the "reasonable grounds" inquiry, *infra*). Nevertheless, the extent to which Ms. Robinson failed to inquire about one of the specific requirements for exemption, i.e., whether the SDEOs supervised a "recognized organizational unit with continuing function," suggests that her review of the position descriptions and the regulations was woefully inadequate.

At her deposition, as Plaintiffs recite in their brief, Ms. Robinson was specifically asked if she had considered whether the SDEOs supervised or managed a recognized organizational unit with a continuing function. She replied, "Those terms were not in my consciousness. In my opinion they supervised. They had a group of employees for whom they had supervisory responsibility. But did I think in the terms you just mentioned? No, I did not." Pls.' Opp'n re Liq. Damages, App. D, Tr. 9:7–14, May 17, 2001.

Because of Defendant's concession of liability, and because the parties therefore have never fully argued the question of whether the SDEOs indeed met the criteria of super-

vision of a "recognized organizational unit with continuing function," and further, in light of Defendant's burden of proof on this question of good faith, this Court is disinclined to extend its own inquiry into an ancillary question that Defendant has apparently left hanging. It seems at least superficially evident that Ms. Robinson's admittedly limited inquiry does not even meet the good faith test.

## 2. The Government has Not Proven Reasonable Grounds for its Determination of SDEO Exemption.

"Reasonable grounds" is the objective component of the Government's burden of proof to obviate the otherwise mandatory award of liquidated damages. In Beebe, the Court of Claims elaborated on what might constitute reasonable grounds: "Proof that the law is uncertain, ambiguous or complex may provide reasonable grounds for an employer's belief that he is in conformity with the Act, even though his belief is erroneous." Beebe, 640 F.2d at 1295.

In this instance, the Government must prove reasonable grounds for its initial determination of exemption, where the criteria for executive exemption include: 1) a recognized organizational unit with continuing function; 2) primary duty test—authority to make or recommend certain personnel changes; and 3) primary duty test—customary and regular exercise of discretion and independent judgment in certain work-related activities. All of these criteria would have to be examined in order to weigh whether the government had objectively reasonable grounds in its initial determination of SDEO exemption.

Unfortunately, in the briefing on liquidated damages, Plaintiffs and Defendant focus almost all of their attention on the issue of supervision of a recognized organizational unit. In its response brief in opposition to Defendant's motion on liquidated damages, Plaintiffs make a two-page argument that the SDEOs did not in fact manage such an organizational unit, citing analogous DOL regulations that distinguish mere supervision from the supervision required within the organiza-

tional unit/continuing function criteria as well as a 1975 OPM Federal Personnel Management (FPM) letter, FPM letter 551–7, § B(1)(b), making similar distinctions. See Adams v. United States, 44 Fed.Cl. 772, 776 (1999) (a unit or sub-shift of Supervisory Border Patrol Agents, SBPAs, did not qualify as an organizational unit with continuing function).

The Government's brief against an award of liquidated damages makes three wholly unsupported references to the "complexity" defense. D.'s Mot. to Deny Liq. Damages at 4, 7, 8. In addition, in its reply brief on liquidated damages, the Government makes an even shorter, one-paragraph stab at arguing that the SDEOs did in fact supervise a recognized organizational unit with continuing function, citing deposition testimony of one of the representative GS-9 Plaintiffs. D.'s Reply at 2. While Defendant's slim argument is plausible,[9] it is insufficiently convincing in light of Defendant's burden of proof on the matter. In October 2002, this Court specifically asked the Government to initiate its motion on liquidated damages, in particular with regard to the "objective" component of reasonable grounds. The Government's "proof" of Ms. Robinson's objectively reasonable grounds for finding the SDEOs exempt (particularly as to the organizational unit criterion) is paltry, such that the Court finds that Defendant has failed to meet its burden as a matter of law. Thus, the Court will not exercise its discretion to deny liquidated damages to the SDEO Plaintiffs.

## 3. The Government has Demonstrated Good Faith with regards to Classification of the DOSs.

Although the Government has not made a sufficient case to enable it to escape liability for liquidated damages to the SDEOs, the Court concludes that it has met the test of good faith in its determination that the DOSs, as first-line supervisors to the SDEOs and second-line supervisors to the DEOs, were exempt from FLSA overtime pay requirements. Of course, the Court has not reached a determination whether the DOSs

---

9. In this Court's May 2002 opinion, the Court specifically found that the SDEOs' supervisors, that is, the DOSs, *did* meet this criteria because the shift of SDEOs and DEOs that the DOSs supervised adequately constituted an organizational unit with continuing function.

indeed were properly so classified, an issue that remains outstanding for trial. Nevertheless, it stands to reason that if the SDEOs were considered exempt, the SDEOs' supervisors, the DOSs, would be exempt as well. As noted above, the inquiry is subjective in nature. For purposes of weighing the Government's "honest intentions" in its initial classification of the DOSs, it is of less consequence that the Government's classification of the SDEOs was mistaken or even that the Court will not relieve the Government of liquidated damages to the SDEOs. Ms. Robinson's acknowledged review of the position descriptions of the DOSs, this Court's holding in its May 2002 opinion that the DOSs did indeed supervise a recognized organizational unit with continuing function, and the reasonable conclusion that first-line supervisors are exempt if their subordinates are considered exempt are sufficient grounds to find subjective good faith in the Government's classification of the DOSs.

4. *The Court is Inclined to Find Reasonable Grounds for Defendant's Classification of the DOSs, but will Defer a Decision on Liquidated Damages until after Trial.*

Although, in its May 2002 opinion, this Court advised that it needed more evidence to weigh whether the DOS Plaintiffs met the primary duty test for executive exemption, the "reasonable grounds" inquiry for denying liquidated damages is not whether the Government was right or wrong to have classified the DOSs as exempt, but whether the Government had objectively reasonable grounds at the time of the classification for reaching its determination of exemption. It is highly relevant, therefore, that the position description of the DOSs, see D.'s Opp'n to Pls.' Mot. Summ. J., App. 1–9, plainly references authority to recommend subordinate promotions and strongly suggests the requisite discretion and independent judgment. Ms. Robinson testified in deposition that she based her classification of the DOSs as exempt on her determination that their subordinates, the SDEOs, were exempt as well as on the DOS position descriptions and the regulations. It strikes the Court, then, that from an objective, reasonable person viewpoint, Defendant has met its burden of proof

on liquidated damages, even if this Court should decide, based on evidence still to be adduced at trial, that the DOSs should not have been held exempt.

Of further significance is the *Beebe* court's guidance that "uncertain, ambiguous or complex" aspects of the law may provide sufficient proof that the employer had reasonable grounds for its determination of employee exemption. *Beebe*, 640 F.2d at 1295. Plaintiffs themselves come close to suggesting this lack of clarity:

> The Primary Duties component has several subcomponents, many of which involve criteria that are difficult to determine ...
>
> In sum, whether or not a supervisory employee meets the Primary Duties test is not always clear. It is for such cases, where liability is unclear, that the FLSA contemplates a reduction of liquidated damages.

Pls.' Opp'n re Liq. Damages at 11.

However, inasmuch as both parties have requested the opportunity to supplement their briefs with trial testimony on this issue, the Court will defer a decision on this component of liquidated damages to the DOSs until such time as the Court determines upon trial, if indeed it does so determine, that the DOSs were wrongfully exempted.

C. *Defendant's Conduct Was Not Willful.*

■ The usual statute of limitations period for violations of FLSA is two years. The Portal to Portal Act provides, however, that "a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). The United States Supreme Court, construing § 255(a), has defined "willful" to mean "that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988). Both Plaintiffs and Defendant note, in turn, that OPM regulations define "reckless disregard" as "failure to make adequate inquiry into whether conduct is in compliance with the Act." 5 C.F.R. § 551.104.

While Defendant has the burden of proving good faith and reasonable grounds with regard to liquidated damages, "[t]he burden of proof rests upon the plaintiff to prove that the [employer's] violation was willful." *Statham v. United States,* 2002 WL 31292278, *9 (Fed.Cl.). *See also Adams v. United States,* 46 Fed.Cl. 616, 619 (2000), *Abbott v. United States,* 41 Fed.Cl. 553, 569 (1998).[10]

On first glance, it might seem apparent that Ms. Robinson did not make "adequate inquiry" as to the required criterion of continuing organization unit with continuing function, because she admitted in deposition that she did not even "think in [those] terms." It is extraordinarily overreaching, therefore, for Defendant to claim that "[i]t is clear from Ms. Robinson's testimony that [the] INS ... performed a *thorough* evaluation of the requirements ...." D.'s Opp'n re Willfulness at 3 (emphasis added). Defendant's additional arguments against a finding of the INS's willful violation are that the GS–9 SDEOs are in fact a recognized organization unit and that they satisfied all the requirements for executive exemption except for the 80 percent test of law enforcement officers (which is now a moot question).

The OPM definition of "reckless disregard" as "failure to make adequate inquiry," while somewhat damning to Defendant, does not, in this Court's opinion, end the analysis. The OPM regulations are secondary to the actual prescription of the Supreme Court in *McLaughlin.* *Bankers Trust New York Corp. v. United States,* 225 F.3d 1368, 1375 (Fed.Cir.2000) (the Supreme Court's "interpretation of a statutory provision trumps a subsequent agency interpretation that is inconsistent with the Court's precedent."). Neither party presented any more than cursory reference to *McLaughlin,* but an actual reading of that case reveals there is more to the definition of "reckless disregard" than

the OPM regulations would imply. The Court deliberately drew a distinction between ordinary violations and willful violations of FLSA:

> In common usage the word "willful" is considered synonymous with such words as "voluntary," "deliberate," and "intentional" .... The word "willful" is widely used in the law, and, although it has not by any means been given a perfectly consistent interpretation, it is generally understood to refer to conduct that is not merely negligent.

*McLaughlin,* 486 U.S. at 134, 108 S.Ct. 1677 (internal citation to Roget's Int'l Thesaurus omitted).

The Court even rejected an intermediate standard. "If an employer acts unreasonably, but not recklessly, in determining its legal obligation," then its action is not willful. *Id.* at 135, 108 S.Ct. 1677. Under this standard, and given that the burden of proof is on the Plaintiffs, Ms. Robinson's failure to consider one criterion,[11] although perhaps unreasonable and negligent, was not "deliberate" or "intentional" and thus not willful.

**D.** *FLSA Plaintiffs Are Not Entitled to Pre–Judgment Interest on Overtime Pay Awards.*

█ Plaintiffs seek an award of pre-judgment interest on FLSA overtime damages in the event the Court determines not to award liquidated damages. The parties agree that if liquidated damages are awarded, then pre-judgment interest under the BPA cannot be awarded as well. The parties disagree, however, as to whether pre-judgment interest may be awarded in the event the Court denies liquidated damages to successful plaintiffs. Of course, this issue is now moot as to the SDEOs, based on the Court's award of liquidated damages, *supra.*

---

10. At oral argument, Plaintiffs' counsel acknowledged their burden of proof on this issue of willfulness. Tr. 42:21–25, April 10, 2003.

11. Plaintiffs also proffer, as evidence of the Government's willful disregard of its obligations to pay overtime, the fact that it took the INS some 10 months from the time it first acknowledged its liability to the SDEOs to begin paying them for the overtime status it was conceding. For pur-

poses of assessing whether the Defendant's actions were willful, the Court accepts Defendant's explanation that the delay was due to such factors as adjustments for all SDEO and similar positions, not just those of the named Plaintiffs, and that the adjustments also coincided with the administratively difficult transition of the entire INS into the newly established Department of Homeland Security.

As Defendant properly notes, "If Congress has not waived the United States' sovereign immunity from a claim of a particular type, then sovereign immunity bars the claim." D.'s Supp. Mot. re Pre–Judgment Interest at 2. The United States, as sovereign, can only be sued as it consents to be sued. *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). A waiver of sovereign immunity "cannot be implied but must be unequivocally expressed," *Ledford v. United States*, 297 F.3d 1378, 1381 (Fed.Cir. 2002) (quoting *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969)), and waivers of sovereign immunity must be strictly construed in favor of the sovereign. *Inter–Coastal Xpress, Inc. v. United States*, 296 F.3d 1357 (Fed.Cir.2002) (citing *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33–34, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992)). Courts should construe ambiguities in favor of immunity. *United States v. Williams*, 514 U.S. 527, 531, 115 S.Ct. 1611, 131 L.Ed.2d 608 (1995). With respect to claims against the sovereign for interest, unless an award of interest was "affirmatively and separately contemplated by Congress," no interest shall be awarded to prevailing plaintiffs. *See Library of Congress v. Shaw*, 478 U.S. 310, 315, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986).

In *Zumerling v. Marsh*, 783 F.2d 1032 (Fed.Cir.1986) and *Doyle v. United States*, 931 F.2d 1546, 1550 (Fed.Cir.1991), the Federal Circuit held that FLSA itself does not waive the United States' sovereign immunity for payment of interest. "The FLSA does not waive immunity for suits against the Government for interest. Whether labeled liquidated damages for delay, delay damages, or interest, plaintiffs have no statutory basis for recovery." *Doyle*, 931 F.2d at 1551. Neither of these cases, however, squarely addresses the issue of whether FLSA claims fall under the umbrella of the Back Pay Act (BPA), the position Plaintiffs urge the Court to adopt.

The Back Pay Act, 5 U.S.C. § 5596, provides for a mandatory award of pre-judgment interest for anyone awarded back pay under the Act itself.

5 U.S.C. § 5596 provides, in relevant part:

(b)(1) An employee of an agency who, on the basis of a timely appeal or an administrative determination (including a decision relating to an unfair labor practice or a grievance) is found by appropriate authority under applicable law, rule, regulation, or collective bargaining agreement, to have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay, allowances, or differentials of the employee—

(A) is entitled, on correction of the personnel action, to receive for the period for which the personnel action was in effect—
(i) an amount equal to all of any part of the pay ... which the employee normally would have earned or received during the period if the personnel action had not occurred, less any amounts earned by the employee through other employment during that period.

(b)(2)(A) *An amount payable under paragraph (1)(A)(i) of this subsection shall be payable with interest.*

(Emphasis added).

The circuits have split in deciding whether a plaintiff may recover interest under the authority of the BPA if the case was not brought *under* the BPA. *Compare Brown v. Secretary of the Army*, 918 F.2d 214, 218 (D.C.Cir.1990) (a plaintiff who otherwise meets the requirements of the BPA may recover interest via the BPA in a Title VII action); *Social Security Admin. v. FLRA*, 201 F.3d 465, 468 (D.C.Cir.2000) (suggesting BPA waives sovereign immunity from interest awards under statutes "such as the FLSA"); *Woolf v. Bowles*, 57 F.3d 407, 410 (4th Cir.1995) (BPA may waive immunity from interest recovery on Title VII and age discrimination failure-to-promote award where improperly-denied promotion was non-competitive and mandatory); *Edwards v. Lujan*, 40 F.3d 1152, 1154 (10th Cir.1994) (adopting *Brown*), *with Arneson v. Callahan*, 128 F.3d 1243, 1246 (8th Cir.1997) (the BPA must unequivocally express Congress's intent to waive sovereign immunity in the context of the sued-upon statute in order to receive interest pursuant to the BPA). The Federal

Circuit has not yet squarely addressed this issue.

The D.C. Circuit in *Social Security Admin.* and *Brown*, and the other circuits that have held that the BPA separately provides a necessary waiver of sovereign immunity, derived their holdings from a Supreme Court decision, *Loeffler v. Frank*, 486 U.S. 549, 108 S.Ct. 1965, 100 L.Ed.2d 549 (1988), establishing that a separate statute, the Postal Reorganization Act, 39 U.S.C. § 101 *et seq.*, could provide the necessary express waiver for a pre-judgment interest recovery under Title VII (of the Civil Rights Act of 1964). As the Eighth Circuit persuasively noted in *Arneson*, however, the *Loeffler* Court based its exception to the "no interest rule" on the distinction that the governmental entity there, the U.S. Postal Service, was acting in its capacity as a "private commercial entity" under the Postal Reorganization Act. "The search for an express waiver of immunity from interest within Title VII ... [was] unnecessary." *Id.* at 565, 108 S.Ct. 1965. *Loeffler* establishes only that a separate statute *can* provide sufficient waiver for assessing interest. The question remains whether the BPA provides such a waiver for a recovery under FLSA.

Plaintiffs make a strong argument that an improper exemption from FLSA's overtime pay requirements constitutes "an unjustified or unwarranted personnel action" and one that results in the "withdrawal or reduction of all or part of the pay" or allowances of an employee. 5 U.S.C. § 5596(b)(1). Thus, pursuant to Section 5596(b)(2) of the BPA, the recovery under Section (b)(1)(A)(i) "shall be payable with interest."

On the other hand, because under FLSA the statute itself specifies the remedy of overtime compensation (unlike back pay due to improper suspension or demotion, for which the BPA was specifically designed), it has been argued that resort to the BPA is not needed to recover back pay. As the court described the Government's argument in *Adams v. United States*, 48 Fed.Cl. 602, 609 (2001), "[i]f [the BPA] is not needed, as in a FLSA action, it cannot be invoked with respect to the other remedial aspects, such as interest and attorney fees." Thus, be-cause FLSA is an independent ground for recovery of back pay, the BPA does not apply and, without the BPA, there is no express waiver of immunity. Ultimately, the court in *Adams* was not persuaded by this clever but circular bind with which to ensnare FLSA plaintiffs.

The real problem for Plaintiffs remains the conflict between liquidated damages and pre-judgment interest. An award of liquidated damages precludes an award of interest, as both parties agree.

If, however, Plaintiffs' argument is valid that the BPA separately serves as a waiver of sovereign immunity for a recovery of interest under FLSA, given that such an interest award is *mandatory* under the BPA and that interest and liquidated damages cannot both be awarded, then liquidated damages would never be available in a FLSA action against the United States. "In essence, liquidated damages would be read out of the FLSA. This result is so at odds with the FLSA remedy Congress created that we could not adopt it unless the waiver were plain." *Id.* at 611.

In conclusion, the scheme that FLSA contemplates for recovery of overtime pay *and* liquidated damages would be substantially undermined by what might otherwise be fairly seen as an express waiver of immunity under the BPA to allow a recovery of pre-judgment interest. Thus, the BPA must be construed as failing to provide the express waiver necessary for interest on FLSA back pay awards.

E. *The Word "Or" as it First Appears in the Primary Duty Test Cannot be Construed as Wholly Disjunctive.*

The remaining issue before the Court is whether to construe the word "or" conjunctively or disjunctively as it first appears in the first component of the primary duty test for executive exemption. The pertinent language is:

(a) Primary Duty Test. The primary duty test is met if the employee—

(1) Has authority to make personnel changes that include, but are not limited to, selecting, removing, advancing in pay,

*or* promoting subordinate employees, or has authority to suggest or recommend such actions with particular consideration given to these suggestions and recommendations;

5 C.F.R. § 551.205(a)(1) (emphasis added).

Although the authority regarding personnel changes is not limited to the four actions specifically noted, those four—"selecting, removing, advancing in pay, *or* promoting" (emphasis added)—are the focus of the dispute between Plaintiffs and Defendant. While the Government has averred that it is prepared to offer evidence at trial that the DOSs had authority that included all four actions, its argument for purposes of the instant motion is that any one of the actions is sufficient to meet this component of the exemption (thus, defining "or" disjunctively).[12] Plaintiffs, by contrast, argue that the test, at a minimum, requires exempt employees to exercise authority over all four actions (thus, defining "or" conjunctively).[13]

For purposes of parsing the regulation at issue, it is important to recognize that the second "or" is not at issue, that is, the parties have acknowledged that the DOSs did not have authority actually to "make" the personnel changes in question. The additional focus, rather, is whether the DOSs had authority to "suggest or recommend" the personnel changes "with particular consideration given to these suggestions and recommendations." Indeed the Government made no claim in its cross-motion for summary judgment that the DOSs had authority to recommend "removing" subordinate employees, but marshaled evidence that they did make both disciplinary recommendations and promotion recommendations via semi-annual evaluations, recommendations for outstanding performance, provided "input into promotion and hiring" by service on promotion and hiring boards, and had authority to approve or deny SDEO recommendations on DEO promotion. Plaintiffs dispute that such evaluations, etc., amount to promotion "recommendations" *per se.* In any event, this Court held in its May 2002 opinion that "[t]he parties should be prepared to marshal evidence at trial that

would fully explore the nature of Plaintiffs' involvement in recommending personnel changes." May 8, 2002, Opinion at 11.

Whether the Court construes "or" as disjunctive or conjunctive, then, determines the extent of the evidence that the Government must present at trial. If "or" is disjunctive, the Government need only prove that the DOSs had authority over any one of the specified personnel actions; if "or" is conjunctive, the Government must show that their authority extended to all four of the personnel actions.

Noting that "statutory construction begins with the language of the statute itself," the Federal Circuit has held, in the context of a federal worker who needed to qualify for "employee" status at her agency in order to maintain an appeal to the Merit Systems Protection Board, that "[t]he plain meaning of 'or' is disjunctive." *Van Wersch v. Dep't of Health and Human Serv.,* 197 F.3d 1144, 1148 (Fed.Cir.1999). It is also a canon of statutory construction that "similar language contained within the same section of a statute must be accorded a consistent meaning." *Nat'l Credit Union Admin. v. First Nat'l Bk. and Trust Co.,* 522 U.S. 479, 501, 118 S.Ct. 927, 140 L.Ed.2d 1 (1998). However, Plaintiffs point to authority that suggests that although the plain meaning approach may sometimes be appropriate, it is also true that "or" has been defined as creating a multiple rather than an alternative obligation. *Chavez v. Dep't of Health and Human Serv.,* 103 F.3d 849, 850 n. 1 (9th Cir.1996) (relying on definition provided in Black's Law Dictionary).

The Court is persuaded that the plain meaning of the recitation of four possible personnel actions in the OPM regulation signifies a disjunctive interpretation of this component of the primary duty test of executive exemption. Nevertheless, this Court's determination of the reasonable construction of "or" in the OPM regulation is not the end of its inquiry in light of the Federal Circuit's recent decision in *Billings.* There, the court suggests that consistency between OPM and

---

**12.** Tr. 66:13–18; 74:20–24, April 10, 2003.

**13.** Tr. 65:3–6, April 10, 2003.

Department of Labor (DOL) [14] interpretations of FLSA is a factor that must be considered. In the context of *Chevron* deference to agency interpretations, the Federal Circuit laid out the following analysis:

> Thus, we must first determine whether the OPM interpretation of the statute is reasonable, as well as whether any difference between OPM's interpretation and the Labor Department standard is required to effectuate the consistency of application of the provision to both federal and non-federal employees. *See, e.g., Zumerling v. Devine,* 769 F.2d 745, 750 [(Fed.Cir.1985)] (OPM's guidelines must 'harmonize with the statute's "origin and purpose," ... as well as with the Secretary of Labor's regulations.' (internal citations omitted)).

*Billings,* 322 F.3d at 1334.

The next inquiry for the Court, then, is whether there is any difference between OPM's and DOL's interpretation of this component of executive exemption and, if so, whether such difference is "required to effectuate" consistent application of the provision to both federal and non-federal employees.

The Department of Labor regulation that is pertinent to this issue is 29 C.F.R. § 541.1. It states in relevant part:

> The term employee employed in a bona fide executive capacity in section 13(a)(1) of the Act shall mean any employee:
>
> . . .
>
> (c) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing *and* as to the advancement and promotion or any other change of status of other employees will be given particular weight;

29 C.F.R. § 541.1 (2002) (emphasis added). Moreover, 29 C.F.R. § 541.106, a regulation promulgated as an interpretive aid for § 541.1(c) recites:

> § 541.106  Authority to hire or fire.
>
> Section 541.1 requires that an exempt executive employee have the authority to

hire or fire other employees or that his suggestions and recommendations as to hiring or firing and as to advancement and promotion or any other change of status of the employees who[m] he supervises will be given particular weight. Thus, no employee, whether high or low in the hierarchy of management, can be considered as employed in a bona fide executive capacity unless he is directly concerned either with the hiring or the firing *and* other change of status of the employees under his supervision, whether by direct action or by recommendation to those to who[m] the hiring and firing functions are delegated.

29 C.F.R. § 541.106 (emphasis added).

Like the OPM regulation, the DOL regulations contemplate two distinct roles that an employee may play in personnel decisions in order to be exempt: authoritative, i.e., authority to make or take the specified personnel actions, or advisory, i.e., authority to suggest or recommend such actions with "particular weight" given to such suggestions or recommendations ("OPM"s comparable phraseology is "particular consideration" [15]). Again, the DOSs' authority to suggest or recommend such actions with particular consideration/weight is the focus of the Court's attention, rather than whether they had authority to make or take such actions. The DOL regulations recite five separate personnel actions: "hiring," "firing," "advancement," "promotion," (unspecified) "other change of status;" as compared to the OPM actions denominated as "selecting," "removing," "advancing in pay," "promoting." In *Billings,* the court implies that the terms "selecting" and "removing" are comparable to "hiring" and "firing," respectively. *Billings,* 322 F.3d at 1330.

Surprisingly, however, in supplemental briefing ordered by this Court to address the application of *Billings* to the present issue, neither Plaintiffs nor Defendant saw any meaningful inconsistency between the OPM

---

**14.** The Department of Labor is charged with administering FLSA with respect to all applicable non-federal employees. *See Billings,* 322 F.3d at 1333.

**15.** This Court does not detect any significant distinction between the phrases "particular consideration" and "particular weight."

and DOL regulations.[16]  This Court is surprised, because the DOL regulations plainly contain a conjunctive "and" that is not consistent with the comparable OPM regulation. The significance of this conjunctive part of the DOL regulations is that it clearly demonstrates that "hiring" or "firing" (whether the action itself or a recommendation as to such action) is a *required* component of the test for executive exemption, whereas Defendant's construction of the OPM regulation would have the Court find an employee exempt based merely on authority to promote or advance in pay.  Thus, in the context of executive employees, the OPM standard clearly sets out a broader opportunity for exemption (or, from Plaintiffs' perspective, a looser threshold) than the DOL regulations.

Having determined that a disjunctive reading of the OPM regulation is otherwise appropriate, this Court finds that there is thus a difference between the OPM and DOL regulations. *Billings* provides that the next inquiry is whether such difference "is required to effectuate the consistency of application of the provision to both federal and non-federal employees." *Id.* at 1334.  In *Billings,* the question was whether OPM's omission of a "salary basis test" for executive exemption fatally conflicted with comparable DOL requirements as a condition of executive exemption.  The Federal Circuit held that, because of "the peculiar nature of the statutory framework surrounding federal employment," the variance between the two regulations was "no more than needed to accommodate the difference between private and [federal] public sector employment." *Id.* Here, however, there is no apparent justification for why a federal employee should be considered an executive exempt from FLSA overtime requirements because of authority to recommend mere advancement in pay or promotion of subordinates, while a comparable private sector employee is required to demonstrate additional authority to recommend the more significant action of hiring or firing such subordinates.

With no evident justification for the discrepancy, OPM's regulation must be made to "harmonize with [FLSA]'s 'origin and purpose,' ... *as well as with the Secretary of Labor's regulations." Id.* (emphasis added).

In resolving conflicts between OPM administration and Labor Department administration, Congress has instructed that '[OPM] will administer the provisions of the [Fair Labor Standards Act] in such a manner as to assure consistency with the meaning, scope, and application established by the rulings, regulations, interpretations, and opinions of the Secretary of Labor which are applicable in other sectors of the economy.'  House Report [H.R.Rep. No. 93–913] at 28[, U.S.Code Cong. & Admin.News 1974, pp. 2811, 2837].

*Id.* at 1333.  *See also Am. Fed'n of Gov't Employees v. OPM,* 821 F.2d 761, 771 (D.C.Cir.1987).

Based on the guidance provided by the Federal Circuit in *Billings,* this Court finds that the OPM regulation at issue cannot be construed strictly disjunctively (nor, for that matter, strictly conjunctively).  Instead, to satisfy the first component of the primary duty test, the Government must show at a minimum that an exempt employee had authority:

"to *make* personnel changes" that include, although are not necessarily limited to, selecting (hiring) or removing (firing) *and* advancing in pay or promoting subordinate employees, or

"to *suggest or recommend* such actions with particular consideration given to these suggestions and recommendations." 5 C.F.R. § 551.205(a)(1) (emphases added).

In short, a demonstration of authority regarding hiring or firing is required.  The

---

**16.**  "The Government agrees with the plaintiffs, that there are no substantive differences between the OPM and the Department of Labor versions of the executive exemption and further state[s] that any differences between the regulations are employed only to address the peculiarities and terminology of Federal employment."  D.'s Supp. Brief at 1, April 25, 2003.

"The only discernable differences between the Department of Labor (DOL) regulations and Office of Personnel (sic)(OPM) regulations for the primary duty test for executive exemption are in style not substance."  Pls.' Supp. Brief at 2, April 22, 2003.

Court will thus hear the parties' evidence regarding this component as construed herein, as well as the remaining component of the primary duty test, at trial.

## IV. Conclusion

For the reasons stated above, the Court **GRANTS** Plaintiffs' motion to set May 28, 1999, as the commencement date of the claim of Plaintiff Eduardo Ramirez; **DENIES** Defendant's motion that the Court forego an award of liquidated damages to the SDEO Plaintiffs; **DENIES** Plaintiffs' motion that Defendant's actions exempting both the SDEO and DOS Plaintiffs were willful; **DENIES** Plaintiffs' motion for an award of prejudgment interest to the SDEOs, as moot, or to the DOSs, should they prevail at trial; and **DENIES** Defendant's motion to construe "or" (as it first appears in the primary duty test) as wholly disjunctive.